David N. Lake, Esq., State Bar No. 180775
**LAW OFFICES OF DAVID N. LAKE,**
**A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 788-5199
david@lakelawpc.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ADVANCED ADVISORS, GP,

Plaintiff,

v.

STEPHEN BERMAN, *et al.,*

Defendants.

and

JAKKS PACIFIC, INC.,

Nominal Defendant.

Case No. 2:14-cv-01420 JAK (SSx)
(Consolidated)

**NOTICE TO ALL DEFENDANTS OF INTENT TO SERVE SUBPOENA ON OAKTREE CAPITAL MANAGEMENT,L.P.**

**TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiffs intend to serve the annexed subpoena upon Oaktree Capital Management, L.P. on or after November 5, 2014.

DATED: October 24, 2014

LAW OFFICES OF DAVID N. LAKE

By: /s/
DAVID N. LAKE
Attorneys for Plaintiffs

Laurence D. Paskowitz, Esq.
**THE PASKOWITZ LAW FIRM P.C.**
208 East 51st Street, Suite 380
New York, New York 10022
212- 685-0969
212-685-2306 (fax)
classattorney@aol.com

and

Jeffrey C. Block, Esq.
Joel Fleming, Esq.
**BLOCK & LEVITON LLP**
155 Federal Street
Boston, MA 02110
617-398-5600
jeff@blockesq.com

*Co-lead counsel*

**Of Counsel:**

Roy L. Jacobs, Esq.
**ROY JACOBS & ASSOCIATES**
420 Lexington Avenue-Suite 2440
New York, NY 10170
212- 867-1156
212-504-8343 (Fax)
rjacobs@jacobsclasslaw.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| ADVANCED ADVISORS, GP<br>*Plaintiff*<br>v.<br>STEVEN BERMAN, et al.<br>*Defendant* | ) ) ) ) ) ) | Civil Action No. 2:14-cv-01420JAK (SSx) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Oaktree Capital Management, L.P., 277 Park Avenue, 45th Floor, New York, NY 10172

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: set forth on Attachment A.

| Place: ROY JACOBS & ASSOCIATES<br>420 Lexington Avenue-Suite 2440<br>New York, NY 10170 | Date and Time:<br>11/25/2014 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 11/05/2014

*CLERK OF COURT*

_________________________
*Signature of Clerk or Deputy Clerk*

OR

[signature]
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* ADVANCED ADVISORS, GP, who issues or requests this subpoena, are:

David N. Lake, 16130 Ventura Blvd., Suite 650, Encino CA, 91463-818-788-5100; david@lakelawpc.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 2:14-cv-01420JAK (SSx)

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❐ I served the subpoena by delivering a copy to the named person as follows: ______________
______________________________________________
______________________________ on *(date)* ____________ ; or

❐ I returned the subpoena unexecuted because: ______________________________
______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A TO OAKTREE CAPITAL MANAGEMENT, LP SUBPONEA**

**DEFINITIONS**

A. "Action" means the above-captioned action.

B. "Affiliate" means, with respect to any specified person, any other person that directly, or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with the specified person, including but not limited to, each and every present and former general partner, corporate parent, subsidiary, successor in interest, members of the immediate family of the person, and any persons owned or controlled by the person and/or members of the person's immediate family, or in which such person and/or members of his/her immediate family are beneficiaries. For purposes of this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting stock, by contract or otherwise, regardless of whether such control was exercised.

C. The terms "and" or "all" shall be construed either disjunctively or conjunctively to bring within the scope of the Document Requests all responses that might otherwise be construed as outside their scope.

D. The terms "any" or "each" shall each be construed as both "each" and "every" to bring within the scope of the Document Requests all responses which might

otherwise be construed to be outside their scope.

E. The term "communication" or "communicate" refers to the transmittal of information (in the form of facts, ideas, inquiries, queries, data bits or otherwise) by any means of transmission, regardless of whether the transmittal was initiated or received by an individual or a system. Means of transmission include, but are not limited to, face-to-face conversations, regular mail, electronic mail ("email"), voicemail, telegram, overnight delivery, courier delivery, telephone, facsimile, text message, instant message or telex.

F. "Concern" or "concerning" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting or constituting.

G. "Document" means "document" as that term is defined and used in Rule 34 of the Rules of Federal Procedure and includes, without limitation, regardless of whether the document is fixed intangible medium or stored on, or in, computer tape, disk, memory, or other magnetic, optical, solid-state or digital storage device or media. The word "document" shall include, by way of example and not by way of limitation, all of the following: paper, correspondence, trade letter, envelope, memoranda, telegram, cable, note, message, email, text message, instant message, voicemail message, report, study, press release, comparison, book, account, check, audio and video recording, motion picture film, pleading, testimony, article, bulletin, pamphlet, brochure, magazine,

questionnaire, survey, chart, newspaper, calendar, desk calendar, pocket calendar, list, log, publication, notice, diagram, instruction, diary, minutes of meetings, corporate minutes, order, resolution, agenda, memorials or notes of oral communications, whether by telephone or face-to-face, contract, agreement, drafts of proposed contract or agreement, memoranda of understanding, letter of intent, deal memoranda, transcriptions of audio or video recording, electronic device memory, computer files, distributed databases, unclassified digital objects, photographs, charts, graphs, microfiche or any other tangible thing on which any handwriting, typing, printing, photostatic, digital form of communication or information is recorded, stored, or reproduced, together with all notations or meta-data on, or of, any of the foregoing, all originals, file copies, or other unique copies or duplications of the foregoing and all versions of drafts thereof, whether used or not and including "deleted" files on or in a computer or computer storage device or media whether located on-site or off-site.

H. The term "including" means "including without limitation."

I. "Person" means any individual, corporation, partnership, firm, association, government agency or other organization recognizable at law, and its agents and employees.

J. The term "relating to" or "referring to" shall mean in any way concerning, constituting, referring to, analyzing, discussing, describing, considering, modifying, supporting, qualifying, terminating, provoking, canceling, negating, refuting or listing.

K. The terms "You" and "Your" mean the parties to whom these Requests are directed, their agents, employees, officers, directors, parent companies, subsidiaries, representatives, affiliates, attorneys, and any other person or entity acting on their behalf.

L. "Business Plan" means any strategic plan for JAKKS, whether or not formally adopted by the Board, as to any quarter, year, or multi-year period.

M. "Clinton Group" means The Clinton Group, Inc. and its directors, officers, agents (including, but not limited to, attorneys, accountants, consultants, investment advisors, or bankers), employees, representatives, divisions, branches, subsidiaries, affiliates and any other person or entity purporting to act on its behalf and any predecessor or successor company.

N. The "Individual Defendants" means Defendants Stephen Berman, Joel Bennett, Michael G. Miller, Murray L. Skala, Robert E. Glick, Marvin Ellin, Dan Almagor, Leigh Anne Brodsky, Rex H. Poulsen, and Peter F. Reilly, either collectively or individually, or in any combination or permutation thereof,

O. "JAKKS" or "the Company" means nominal Defendant JAKKS Pacific, Inc., and its directors (including the Individual Defendants), officers, agents (including, but not limited to, attorneys, accountants, consultants, investment advisors, or bankers), employees, representatives, divisions, branches, subsidiaries, affiliates and any other person or entity purporting to act on its behalf and any predecessor or successor company.

P. "Merrill Lynch" shall mean Merrill Lynch, Pierce, Fenner & Smith

Incorporated.

Q. "Oaktree" means Oaktree Capital Management, L.P. and its directors, officers, agents (including, but not limited to, attorneys, accountants, consultants, investment advisors, or bankers), employees, representatives, divisions, branches, subsidiaries, affiliates and any other person or entity purporting to act on its behalf and any predecessor or successor company as well as any fund or other account managed or controlled by Oaktree Capital Management, LP.

R. The "Repurchase" means the self-tender offer commenced by JAKKS by means of a May 25, 2012 "Offer to Purchase" 4 million shares of common stock at a $20 price per share, and completed with said purchase, on or about July 5, 2012.

S. "Settlement Agreement" means the agreement, dated as of April 22, 2012, by and between JAKKS and Clinton Group.

T. "Stockholder Rights Agreement" or "SRA" means the Rights Agreement, dated as of March 5, 2012, between JAKKS and Computershare Trust Company, N.A., a national banking association."Poison Pill" shall mean this same agreement.

## RELEVANT TIME PERIOD

Unless otherwise specified, all requests herein refer to the period of January1, 2011 through the present ("the Relevant Time Period") and include all documents and

information that concern that period, even though prepared or published outside of that period.

## DOCUMENTS TO BE PRODUCED

1. All documents sent to or received from JAKKS.

2. All documents sent to or received from Clinton Group or concerning communications with Clinton Group concerning JAKKS.

3. All documents sent to or received from Merrill Lynch or concerning communications with Merrill Lynch concerning JAKKS.

4. All communications, documents and analyses concerning the price, value, projected price, and projected value of JAKKS or JAKKS shares created during the period from January 1, 2011 through December 31, 2012.

5. All documents which concern or reflect Oaktree's initial contact with JAKKS in or about March 2011, including but not limited to, any analyses made by Oaktree regarding JAKKS prior to that first contact.

6. All documents concerning your meeting with representatives of JAKKS on May 10, 2011 in Los Angeles, California, including but not limited to, any materials presented at that meeting, notes taken, presentations made, internal communications at to the results of that meeting, and follow-up communications via e-mail or otherwise.

7. All documents which concern or support Oaktree's assertion in its September 13, 2011 press release that JAKKS had engaged in a "continued refusal to engage in meaningful discussions about the options available for maximizing shareholder value at JAKKS…"

8. All documents concerning your September 13, 2011 proposal to acquire all shares of JAKKS for $20 per share including, but not limited to, documents concerning the potential financing for such a transaction.

9. All documents which concern or support the assertion in your September 13, 2011 letter to JAKKS that: "Since the time of our initial discussions in March, macro-economic conditions have deteriorated significantly, and the Company's prospects have not improved."

10. All documents which support or concern Oaktree's assertion in its September 13, 2011 letter that: "the Oaktree Funds are prepared to commit substantial capital resources to the Company, in the form of both debt and equity to help fund future acquisitions, new licenses and an aggressive organic growth strategy."

11. In regard to the assertion by JAKKS on or about September 16, 2011 that your offer was "highly conditional," all documents concerning any conditions Oaktree placed on its offer or on negotiations with JAKKS.

12. All documents analyzing or responding to the assertions made in JAKKS' letter to you dated on or about September 16, 2011.

13. All documents analyzing or concerning the assertions and suggestions made by Clinton Group in its letter to JAKKS dated on or about March 14, 2012.

14. All documents concerning and supporting the assertions made in your letter to JAKKS dated on or about April 17, 2012 including, but not limited to, any interest by Guggenheim in participating in the financing of a buy-out offer.

15. All documents and communications concerning the SRA/Poison Pill, including without limitation, all documents and communications concerning the effect of the SRA/Poison Pill on any actions taken or contemplated to be taken by Oaktree.

16. All documents and communications concerning the Repurchase, including without limitation, all documents and communications concerning any costs or benefits of the Repurchase to JAKKS, to the JAKKS shareholders and/or to Oaktree.

17. All documents concerning efforts by JAKKS and Oaktree to negotiate a confidentiality and/or standstill agreement between April and August 2012 including, but not limited to, documents concerning the terms Oaktree found unacceptable, as reflected in its letter to JAKKS dated June 15, 2012, and documents concerning Oaktree's revised draft sent to JAKKS on or about August 13, 2012.

18. All documents concerning Oaktree's decisions to buy, sell, or hold any JAKKS shares during the period from January 1, 2011 through December 31, 2012.

19. All documents concerning any possible proxy contest or other action related to replacement of any member of the JAKKS Board.

20. Documents reflecting any sale of shares held by Oaktree in the Repurchase.