David N. Lake, Esq., State Bar No. 180775
**LAW OFFICES OF DAVID N. LAKE,**
 **A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 788-5199
david@lakelawpc.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANCED ADVISORS, GP,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>STEPHEN BERMAN, *et al.*,<br><br>　　　　Defendants.<br><br>　and<br><br>JAKKS PACIFIC, INC.,<br><br>　　　　Nominal Defendant. | Case No. 2:14-cv-01420-JAK (SSx)<br>(Consolidated)<br><br>**NOTICE TO ALL DEFENDANTS OF INTENT TO SERVE SUBPOENA ON MERRILL LYNCH PEIRCE FENNER AND SMITH, INCORPORATED** |

**TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiffs intend to serve the annexed subpoena upon Merrill Lynch Peirce Fenner and Smith, Incorporated on or after November 26, 2014.

DATED: November 20, 2014                LAW OFFICES OF DAVID N. LAKE

                                        By: _____/S/_____
                                              DAVID N. LAKE
                                              Attorneys for Plaintiffs

Laurence D. Paskowitz, Esq.
**THE PASKOWITZ LAW FIRM P.C.**
208 East 51st Street, Suite 380
New York, New York 10022
212- 685-0969
212-685-2306 (fax)
classattorney@aol.com

       and

Jeffrey C. Block, Esq.
Joel Fleming, Esq.
**BLOCK & LEVITON LLP**
155 Federal Street
Boston, MA 02110
617-398-5600
jeff@blockesq.com

*Co-lead counsel*

**Of Counsel:**

Roy L. Jacobs, Esq.
**ROY JACOBS & ASSOCIATES**
420 Lexington Avenue-Suite 2440
New York, NY 10170
212- 867-1156
212-504-8343 (Fax)
rjacobs@jacobsclasslaw.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| ADVANCED ADVISORS, GP<br>*Plaintiff*<br>v.<br>STEVEN BERMAN, et al.<br>*Defendant* | )<br>)<br>)  Civil Action No.  cv14-01420-JAK (SSx) (Cons.)<br>)<br>)<br>) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Merrill Lynch Pierce Fenner and Smith Incorporated, One Bryant Park, New York, NY 10036

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: set forth on Attachment A.

| Place: ROY JACOBS & ASSOCIATES<br>420 Lexington Avenue-Suite 2440<br>New York, NY 10170 | Date and Time:<br>12/16/2014 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   11/26/2014

CLERK OF COURT

OR

_____        _____
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
ADVANCED ADVISORS, GP_____, who issues or requests this subpoena, are:
David N. Lake, 16130 Ventura Blvd., Suite 650, Encino CA, 91463-818-788-5100; david@lakelawpc.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## ATTACHMENT A TO MERRILL LYNCH PIERCE FENNER AND SMITH, INCORPORATED

### DEFINITIONS

A.      "Action" means the above-captioned action.

B.      "Affiliate" means, with respect to any specified person, any other person that directly, or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with the specified person, including but not limited to, each and every present and former general partner, corporate parent, subsidiary, successor in interest, members of the immediate family of the person, and any persons owned or controlled by the person and/or members of the person's immediate family, or in which such person and/or members of his/her immediate family are beneficiaries. For purposes of this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting stock, by contract or otherwise, regardless of whether such control was exercised.

C.      The terms "and" or "all" shall be construed either disjunctively or conjunctively to bring within the scope of the Document Requests all responses that might otherwise be construed as outside their scope.

D.      The terms "any" or "each" shall each be construed as both "each" and "every" to bring within the scope of the Document Requests all responses which might otherwise be construed to be outside their scope.

1

E.   The term "communication" or "communicate" refers to the transmittal of information (in the form of facts, ideas, inquiries, queries, data bits or otherwise) by any means of transmission, regardless of whether the transmittal was initiated or received by an individual or a system. Means of transmission include, but are not limited to, face-to-face conversations, regular mail, electronic mail ("email"), voicemail, telegram, overnight delivery, courier delivery, telephone, facsimile, text message, instant message or telex.

F.   "Concern" or "concerning" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting or constituting.

G.   "Document" means "document" as that term is defined and used in Rule 34 of the Rules of Federal Procedure and includes, without limitation, regardless of whether the document is fixed in tangible medium or stored on, or in, computer tape, disk, memory, or other magnetic, optical, solid-state or digital storage device or media. The word "document" shall include, by way of example and not by way of limitation, all of the following: paper, correspondence, trade letter, envelope, memoranda, telegram, cable, note, message, email, text message, instant message, voicemail message, report, study, press release, comparison, book, account, check, audio and video recording, motion picture film, pleading, testimony, article, bulletin, pamphlet, brochure, magazine, questionnaire, survey, chart, newspaper, calendar, desk calendar, pocket calendar, list, log, publication, notice, diagram, instruction, diary, minutes of meetings, corporate minutes,

order, resolution, agenda, memorials or notes of oral communications, whether by telephone or face-to-face, contract, agreement, drafts of proposed contract or agreement, memoranda of understanding, letter of intent, deal memoranda, transcriptions of audio or video recording, electronic device memory, computer files, distributed databases, unclassified digital objects, photographs, charts, graphs, microfiche or any other tangible thing on which any handwriting, typing, printing, photostatic, digital form of communication or information is recorded, stored, or reproduced, together with all notations or meta-data on, or of, any of the foregoing, all originals, file copies, or other unique copies or duplications of the foregoing and all versions of drafts thereof, whether used or not and including "deleted" files on or in a computer or computer storage device or media whether located on-site or off-site.

  I.  The term "including" means "including without limitation."

  J.  "Person" means any individual, corporation, partnership, firm, association, government agency or other organization recognizable at law, and its agents and employees.

  K.  The term "relating to" or "referring to" shall mean in any way concerning, constituting, referring to, analyzing, discussing, describing, considering, modifying, supporting, qualifying, terminating, provoking, canceling, negating, refuting or listing.

  L.  The terms "You" and "Your" mean the parties to whom these Requests are directed, their agents, employees, officers, directors, parent companies, subsidiaries,

representatives, affiliates, attorneys, and any other person or entity acting on their behalf.

M. "Business Plan" means any strategic plan for JAKKS, whether or not formally adopted by the Board, as to any quarter, year, or multi-year period.

N. "Clinton Group" means The Clinton Group, Inc. and its directors, officers, agents (including, but not limited to, attorneys, accountants, consultants, investment advisors, or bankers), employees, representatives, divisions, branches, subsidiaries, affiliates and any other person or entity purporting to act on its behalf and any predecessor or successor company.

O. The "Convertible Note Offering" means the private placement of $100 million principal of convertible senior notes due 2018, sold on July 24, 2013.

P. The "Individual Defendants" means Defendants Stephen Berman, Joel Bennett, Michael G. Miller, Murray L. Skala, Robert E. Glick, Marvin Ellin, Dan Almagor, Leigh Anne Brodsky, Rex H. Poulsen, and Peter F. Reilly, either collectively or individually, or in any combination or permutation thereof,

Q. "JAKKS" or "the Company" means nominal Defendant JAKKS Pacific, Inc., and its directors (including the Individual Defendants), officers, agents (including, but not limited to, attorneys, accountants, consultants, investment advisors, or bankers), employees, representatives, divisions, branches, subsidiaries, affiliates and any other person or entity purporting to act on its behalf and any predecessor or successor company.

R. "Merrill Lynch" means Merrill Lynch, Pierce, Fenner & Smith

Incorporated.

S.     "Oaktree" means Oaktree Capital Management, LP and its directors, officers, agents (including, but not limited to, attorneys, accountants, consultants, investment advisors, or bankers), employees, representatives, divisions, branches, subsidiaries, affiliates and any other person or entity purporting to act on its behalf and any predecessor or successor company as well as any fund or other account managed or controlled by Oaktree Capital Management, LP.

T.     The "Repurchase" means the self-tender offer commenced by JAKKS by means of a May 25, 2012 "Offer to Purchase" 4 million shares of common stock at a $20 price per share, and completed with said purchase, on or about July 5, 2012.

U.     "Settlement Agreement" means the agreement, dated as of April 22, 2012, by and between JAKKS and Clinton Group.

V.     "Stockholder Rights Agreement" or "SRA" means the Rights Agreement, dated as of March 5, 2012, between JAKKS and Computershare Trust Company, N.A., a national banking association.

## RELEVANT TIME PERIOD

Unless otherwise specified, all requests herein refer to the period of January 1, 2011 through the present ("the Relevant Time Period") and include all documents and information that concern that period, even though prepared or published outside of that period

## DOCUMENTS TO BE PRODUCED

1. All Business Plans or other financial documents provided by JAKKS to Merrill Lynch with respect to JAKKS' anticipated financial performance during 2011, 2012 and 2013.

2. All documents with respect to JAKKS anticipated financial performance during 2011, 2012 and 2013.

3. All documents concerning JAKKS' financial guidance and the reasons the Company failed to meet such financial guidance.

4. All notes, memos and other documents concerning discussions and/or meetings with Clinton Group concerning JAKKS.

5. All notes, memos and other documents concerning discussions and/or meetings with Oaktree concerning JAKKS.

6. All notes, memos and other documents concerning discussions with JAKKS concerning Clinton Group and/or Oaktree.

7. All communications and documents concerning the price, value, projected price, and projected value of JAKKS' shares during the period from January 1, 2011 through December 31, 2012.

8. All documents which constitute, concern or reflect any JAKKS strategic plan for 2011, 2012 and 2013.

9. All documents constituting or containing analyses, studies, advisory materials, recommendations, and/or discussions concerning Oaktree, Clinton, the SRA, the Settlement Agreement, and the Repurchase.

10. All documents concerning any advice or analysis to JAKKS concerning a proxy contest, or potential proxy contest, with Clinton Group.

11. All documents concerning the funding of the Repurchase and the effect on JAKKS of incurring debt to fund the repurchase.

12. All documents constituting or containing analyses, studies, advisory materials, recommendations, and/or discussions concerning the Convertible Debt Offering.

13. JAKKS' retention agreement with Merrill, and documents reflecting payments made to Merrill during or relating to the Relevant Time Period.

14. Documents constituting or concerning any recommendations or advice provided by Merrill to JAKKS concerning the Repurchase or the SRA.

15. Documents constituting or concerning any fairness opinion (or any documents in the nature of a fairness opinion) provided by Merrill to JAKKS.

16. All documents concerning JAKKS' "strategic plan" as referenced in a letter from Stephen Berman to Oaktree dated October 5, 2011.

17. All documents concerning any "accretive acquisitions" as referenced in a letter from Stephen Berman to Oaktree dated October 5, 2011.

18. All documents concerning any acquisitions or business ventures being considered by JAKKS during 2011 and/or 2012.

19. Any analysis of any business acquisition or joint venture under consideration by JAKKS during 2011 and 2012.

20. All documents concerning any analysis of the price per share paid by JAKKS in the Repurchase.