UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) ORDER RE PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SHAREHOLDER DERIVATIVE SETTLEMENT (DKT. 121); PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEY'S FEES (DKT. 120) JS-6**

## I.     Introduction

Advanced Advisors, G.P. ("Advanced Advisors") and Louisiana Municipal Police Employees Retirement System ("LMPERS") (collectively, "Plaintiffs")[1] brought this derivative action against certain directors and officers of JAKKS Pacific, Inc. ("JAKKS"). First Amended Complaint ("FAC" (Dkt. 20)).[2] The FAC names the following defendants: Stephen Berman, Joel Bennett, Michael G. Miller, Murray L. Skala, Robert E. Glick, Marvin Ellin, Dan Almagor, Leigh Anne Brodsky, Rex H. Poulsen, Peter F. Reilly and JAKKS (as a nominal defendant) (collectively, "Defendants"). *Id.* Plaintiffs are current shareholders of JAKKS. Advanced Advisors acquired JAKKS shares in July 2011. FAC, Dkt. 20 ¶ 16. LMPERS acquired JAKKS shares in July 2012. *Id.* ¶ 17

The FAC alleges that Defendants breached their fiduciary duties to shareholders of JAKKS through each of the following: (i) rejecting an offer to acquire JAKKS; (ii) orchestrating a corresponding, defensive stock repurchase; and (iii) entering into certain ventures with respect to JAKKS' toy business that were related to the foregoing. FAC, Dkt. 20. The FAC advances

---

[1] Plaintiffs originally brought separate actions against Defendants. *See* Complaint, Dkt. 1; *La. Police Ret. Sys. v. Berman*, No. 2:14-cv-1670-JAK-SS (C.D. Cal. Mar. 6, 2014). The two cases were consolidated on April 17, 2014. Dkt. 17. Thereafter, the Plaintiffs filed a consolidated complaint. *See* FAC, Dkt. 20.
[2] All docket entries refer to the lead case -- *Advanced Advisors G.P. v. Berman*, No. 2:14-cv-01420-JAK-SS (C.D. Cal. 2014). Docket entries in *Vladimir Gusinsky Living Trust v. Berman*, No. 2:15-cv-02027-JAK-SS (C.D. Cal. 2015) are referred to as "Gusinsky Dkt."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|----------|--------------------------|------|-------------------|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

four causes of action: (i) contribution due to a related securities class action[3] (against Bennett and Berman); (ii) violation of Section 14 of the Exchange Act, 15 U.S.C. § 78n(a) and Rule 14a-9 (against Berman, Brodsky, Ellin, Glick, Miller, Reilly, Poulsen and Skala); and (iii-iv) breach of fiduciary duty (against Almagor, Berman, Brodsky, Ellin, Glick, Miller, Reilly and Skala). *Id.*

A settlement agreement was reached with Defendants ("Settlement Agreement," Dkt. 86) and preliminary approval of the Settlement Agreement was granted in part. Dkt. 103 at 22. However, preliminary approval of the request for an award of attorney's fees was denied. *Id.* at 23. That denial was without prejudice to a renewed request supported by supplemental evidence offered to address the issues raised in the prior order. *Id.*

Vladimir Gusinsky Living Trust ("Gusinsky") filed three motions on September 28, 2015. First, a motion for final approval of Shareholder Derivative Settlement. Dkt. 121 ("Motion for Settlement Approval"). Berman, Miller, Skala, Glick, Ellin and Almagor filed a supplement to this motion in which they presented authority from the Supreme Court of Delaware (Dkt. 125) and the Plaintiffs responded. Dkt. 126. Second, Plaintiffs filed a motion for an award of attorney's fees and expenses ("Motion for Fees"). Dkt. 120. Third, Plaintiffs filed a motion for an order permitting the submission of an expert declaration ("Motion for Submission"). Dkt. 119. JAKKS opposed that motion (Dkt. 122) as did the Individual Defendants. Dkt. 123. Plaintiffs replied. Dkt. 124.

A hearing on the motions was held on November 2, 2015 and the motions were taken under submission. Dkt. 127. Plaintiffs subsequently filed a notice of supplemental authority in connection with the motions. Dkt. 128.

A status conference on the pending motions was held on November 7, 2016. Dkt. 134. At that time, Plaintiff's counsel withdrew the Motion for Submission. *Id.*

For the reasons stated in this Order, the Motion for Settlement Approval is GRANTED and the Motion for Fees is GRANTED IN PART and DENIED IN PART.

II.    Background and Procedural History

The central premise of the FAC is the allegation that Defendants took actions intended to maintain their positions as officers of JAKKS that were not appropriate or reasonable responses to any legitimate risks to JAKKS that were presented. Motion for Settlement Approval, Dkt. 121 at 8-9. As part of these allegations, the FAC contends that JAKKS was targeted by two activist investors -- Oaktree Capital Management, LP ("Oaktree") and the Clinton Group ("Clinton"). *Id.*

---

[3] *See Melot v. JAKKS Pac., Inc.*, No. 2:13-cv-5388-JAK-SS (C.D. Cal. 2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

at 9. It is alleged that Oaktree made several suggestions that it had an interest in purchasing JAKKS at a premium price, and that Clinton supported those efforts and threatened to replace some or all of JAKKS' Board members through a consent solicitation. *Id.* In response, on March 5, 2012, the Board of Directors of JAKKS adopted a shareholder rights plan. *Id.* On April 22, 2012, acting on behalf of JAKKS, Defendants entered a standstill agreement with Clinton, promising to repurchase approximately 15% of JAKKS' outstanding shares at a premium. *Id.*

On May 28, 2014, Defendants moved to dismiss the operative complaint. Dkt. 30. On September 16, 2014, that motion was granted in part and denied in part. Dkt. 57. It was granted with prejudice as to the claims for contribution and breach of fiduciary duty arising out of the related securities class actions. *Id.* at 24. It was granted without prejudice as to the Section 14 claim and the remaining claims for breach of fiduciary duty. *Id.* The motion was denied as to the *Unocal*[4] claims. *Id.* Plaintiffs were directed to file any amended complaint on or before October 2, 2014. *Id.* On September 29, 2014, the parties informed the Court that Plaintiffs did not intend to file an amended complaint. Dkt. 58.

On December 23, 2014, Defendants filed a motion for judgment on the pleadings. Dkt. 75. There, they argued that because all of Plaintiffs' federal claims were dismissed under the September 16, 2014 Order (Dkt. 57), the only remaining bases for subject matter jurisdiction were diversity and supplemental jurisdiction. *Id.* at 8. Defendants also argued that LMPERS lacked standing to bring its remaining claims because it did not acquire JAKKS shares until July 2012, which was after the occurrence of the allegedly improper transactions that underlie the remaining claims. *Id.* Defendants also argued that there is no subject matter jurisdiction over the claims brought by Advanced Advisors because, in an interrogatory response, Advanced Advisors conceded that there is not complete diversity of citizenship. *Id.* at 9. Defendants argued that dismissal was also appropriate because Plaintiffs filed a duplicative action in the Los Angeles Superior Court on December 18, 2014. *Id.* For these reasons, Defendants argued that the Court should not exercise supplemental jurisdiction over the remaining claims. *Id.* Defendants also moved to stay discovery pending the decision on jurisdiction. Dkt. 77.

---

[4] *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del. 1985) established a basis for heightened scrutiny of claims based on the adoption of defensive measures by a board of directors in response to an external threat to corporate policy and control. Under *Unocal*, "the Board has the burden of showing (1) that it had reasonable grounds for believing that a danger to corporate policy and effectiveness existed, and (2) that [its] defensive response was reasonable in relation to the threat posed." *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 71 (Del. 1995). Only when the Board has established the reasonableness of its perception of a threat and the proportionality of the response does the business judgment rule apply to its actions. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

On January 26, 2015, Plaintiffs moved for leave to amend the FAC. Dkt. 80. There, Plaintiffs proposed substituting Gusinsky for the prior Plaintiffs in order to address the jurisdictional issues raised by Defendants in their motion for judgment on the pleadings. *Id.* at 6. Gusinsky is a citizen of Illinois and has held JAKKS shares since 2006. Complaint, Gusinsky Dkt. 1. Defendants opposed this motion. Dkt. 81.

In January and February, 2015, the parties exchanged mediation briefs. Motion for Settlement Approval, Dkt. 121 at 11. The parties then participated in a day-long mediation session with Judge Layn Phillips (Ret.), and ultimately agreed to a term sheet. It called for the adoption of certain corporate governance reforms. *Id.* The parties then negotiated a proposed award of attorney's fees. *Id.* On March 6, 2015, the parties executed a Memorandum of Understanding, based on the term sheet. *Id.* On February 17, 2015, the parties filed a joint notice in which they stated that they had agreed in principle to settle this action. Dkt. 84. The Court vacated previously filed motions. Dkt. 85. On March 23, 2015, the parties filed a Stipulation of Settlement (Dkt. 86) and the Plaintiffs and Gusinsky moved for preliminary approval of the settlement. Dkt. 87. The motion was unopposed.

On March 19, 2015, Gusinsky filed a separate complaint against Defendants. Complaint, Gusinsky Dkt. 1, LA CV 15-2027 JAK (SSx). On March 26, 2015, Plaintiffs filed a motion to consolidate the cases. Dkt. 89. On March 31, 2015, Gusinsky filed a motion to consolidate. Gusinsky Dkt. 15, LA CV 15-2027 JAK (SSx). On April 3, 2015, Gusinsky filed another motion to consolidate. Gusinsky Dkt. 18, LA CV 15-2027 JAK (SSx).

As noted, the Court granted in part the motion for preliminary approval of the settlement, and denied, without prejudice, the request for preliminary approval of attorney's fees. Dkt.103. The Court also granted the motion for leave to amend to permit the substitution of Gusinsky. Dkt. 103. Gusinsky then dismissed his separate action (Gusinsky Dkt. 24, LA CV 15-2027 JAK (SSx)) and the motion to consolidate was deemed moot. Dkt. 117.

On August 19, 2015, the Court set a schedule for briefing as to the final approval and the application for attorney's fees and directed that notice be issued to class members. *Id.* The notice was published on the website of Plaintiffs' counsel on August 24, 2015, as well as in a Form 8-K and press release issued by JAKKS on August 25, 2015. Dkt. 121 at 13; Decl. of Joel Fleming Ex. P, Dkt. 121-18 (press release); *id.* Ex. Q, Dkt. 121-19 (Form 8-K). On a website to which stockholders were directed by the notice, Plaintiffs' counsel posted copies of all of the briefing submitted in support of approval of the settlement and the requested attorney's fee award. Decl. of Joel Fleming Ex. R, Dkt. 121-20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | | Date | November 15, 2016 |
|---|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | | |

III.     Terms of the Settlement Agreement

A.     Corporate Governance Changes

The Settlement Agreement provides for several changes to the corporate governance of JAKKS. The parties agree that "the litigation efforts of Plaintiffs and Plaintiffs' Counsel were a material and substantial cause in the Company's decision to adopt and implement the Corporate Governance Changes described in ¶ 2.1(a)-(g) below." Settlement Agreement ¶ 2.1. These changes are to be implemented within 30 days after the issuance of a final order of approval. *Id.* They must be kept in place for at least four years. *Id.*

1.     Buyback Committee

The Settlement Agreement provides that a

separate committee consisting solely of independent Board members[5] shall be created to conduct an independent review of any stock buyback plan, including the terms of such plan, and shall approve or reject any proposed stock buyback plan prior to consideration by the full Board and shall exercise continued oversight throughout the execution of any buyback.

*Id.* ¶ 2.1(a).

2.     Future Rights Plan

The Settlement Agreement provides that any "shareholder rights plan shall be approved by all of the independent directors of the Board." *Id.* ¶ 2.1(b).

3.     Cash Allocation

The Settlement Agreement provides that the "Board shall conduct an annual review of the Company's methods of allocating and applying cash between domestic and international operations, taking into account tax issues, and operating needs and uncertainties." *Id.* ¶ 2.1(c).

4.     Budgeting and Planning Practices

---

[5] The Settlement Agreement does not define the term "independent Board members." For purposes of this Order, it is assumed to refer to directors who are neither officers nor employees of JAKKS.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | | Date | November 15, 2016 |
|----------|-------------------------|---|------|-------------------|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | | |

The Settlement Agreement provides that the

> Audit Committee shall review internal budgeting and planning methods and require the CFO to adopt, at a minimum, the following practices: (1) Use non-financial factors as part of the planning and budgeting process. (2) Link budgets to performance measurement. (3) Identify and list specific objectives, targets, drivers or assumptions in the strategic planning and budgeting process. These drivers will then be used throughout the budgeting cycle to determine required quantities, intended resource utilization and direct and indirect cost requirements.

*Id.* ¶ 2.1(d)(i). It is also provided that the "Company will undertake historical review of acquisitions to identify key characteristics of successful acquisitions (e.g., types of acquisitions; size of acquisitions; best product mix; integration into JAKKS' structure; how lessons from these will help future acquisitions)." *Id.* ¶ 2.1(d)(ii).

     5.   <u>CEO Compensation</u>

The Settlement Agreement provides that "JAKKS will continue to tie CEO compensation to the share price." *Id.* ¶ 2.1(e)(i). It also provides that "JAKKS' compensation plan will be peer tested by an independent outside compensation consultant for reasonableness and competitiveness." *Id.* ¶ 2.1(e)(ii).

     6.   <u>Related Party Transactions</u>

The Settlement Agreement provides that "Related Party transactions unrelated to any existing contract or transaction shall be approved by an independent committee of the Board, which shall have the right to obtain counsel or a financial advisor at its own discretion." *Id.* ¶ 2.1(f). The Agreement defines a "Related Party" as "a shareholder who owns 5% or more of the Company's outstanding shares." *Id.*

     7.   <u>Takeover or Merger Proposals</u>

The Settlement Agreement provides: "Should a fully funded, unconditional, premium offer emerge, the Board will establish an independent negotiating committee authorized to determine whether to negotiate and whether to ultimately accept or reject the offer, and shall retain a financial advisor to advise it in connection with the evaluation of the offer." *Id.* ¶ 2.1(g).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | | Date | November 15, 2016 |
|---|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | | |

B.      Releases and Dismissals

1.      <u>Dismissals</u>

After a final judgment is entered, Plaintiffs agree to dismiss with prejudice the derivative action now pending in the Los Angeles Superior Court. *Id.* ¶ 3.1. Plaintiffs also agree to "seek to adjourn all deadlines and proceedings in the Derivative Actions[6] and not to initiate any and all other proceedings other than those incident to the Settlement itself." *Id.* ¶ 3.2.

2.      <u>Releases</u>

a)      Definitions

The term "Release Claims" includes any and all "Unknown Claims":

(1) that have been asserted in any of the Derivative Actions by any of the Plaintiffs, or any of their attorneys, against any of the Released Persons; or (2) that could have been, or in the future could be, asserted in any of the Derivative Actions against any of the Released Persons arising out of, based upon or related to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth or referred to in any of the complaints filed in the Derivative Actions.

*Id.* ¶ 1.17.

"'Released Claims' also includes any and all claims arising out of, relating to, or in connection with the Settlement or resolution of the Derivative Actions against the Released Parties (including Unknown Claims)." *Id.* However,

"Released Claims" do not include: (1) claims alleged in the Class Action;[7] or (2) claims, rights or causes of action or liabilities related to the enforcement of this Stipulation and Settlement, including without limitation any of the terms of this Stipulation or orders or judgments issued by the courts in connection with the Settlement.

---

[6] The term "Derivative Action" is defined as "the consolidated action captioned *Advanced Advisors, G.P. et al. v. Stephen Berman et al.*, 14-cv-01420-SS (SSx) (C.D. Cal.) and, unless otherwise specified, includes the Gusinsky Trust action." *Id.* ¶ 1.7. The term "adjourn," is interpreted for purposes of this Order to mean "vacate."
[7] The term "Class Action" is defined as "the putative federal class action entitled *Melot v. JAKKS Pacific, Inc. et al.*, Case No. 13-cv-05388 (C.D. Cal.)." *Id.* ¶ 1.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | | Date | November 15, 2016 |
|---|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | | |

*Id.* The term "Released Persons" means "each and all of the Plaintiffs and Defendants (including JAKKS and the Individual Defendants[8], as defined herein) and their Related Persons."[9] *Id.* ¶ 1.18.

The term "Unknown Claims" means

> any and all claims and potential claims against Defendants that Plaintiffs do not know or suspect to exist in his, her or its favor as of the Effective Date,[10] and any claims against Plaintiffs that Defendants do not know or suspect to exist in their favor, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement.

*Id.* ¶ 1.22. This includes a waiver of any rights under Cal. Civ. Code § 1542, which provides that a general release does not extend to unknown claims. *Id.* It also includes a waiver of any and all rights under any state or federal law that is similar to Cal. Civ. Code § 1542. *Id.* The release of unknown claims was "separately bargained for and was a key element of the Settlement." *Id.*

---

[8] The term "Individual Defendants" means "Stephen G. Berman, Michael G. Miller, Murray L. Skala, Robert E. Glick, Marvin Ellin, Dan Almagor, Leigh Anne Brodsky and Peter F. Reilly." *Id.* ¶ 1.11.
[9] The term "Related Persons" means "each of an Individual Defendant's or JAKKS' past or present officers, directors, employees, agents, attorneys, accountants, advisors, insurers, co-insurers, reinsurers, heirs, executors, personal representatives, estates, administrators, predecessors, successors and assigns, and any other representatives of any of these persons or entities or their successors." *Id.* ¶ 1.16.
[10] The term "Effective Date" means "the first date by which all of the conditions and events specified in ¶ 6.1 of the Stipulation have been met and have occurred." *Id.* ¶ 1.6. Paragraph 6.1 provides that the "Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events, unless one or more of the conditions is expressly waived in writing by counsel for each of the Settling Parties: (a) [e]ntry by the Court of the Notice Order in the form or substantially in the form attached hereto as Exhibit A; (b) [f]inal approval of the Settlement by the Court following notice to the Company's shareholders and the Final Approval hearing; *provided, however*, that any failure of the Court to approve a Fee and Expense Award request, in whole or in part, shall have no impact on the effectiveness or delay the Effective Date of the Settlement or Stipulation, as specified in § 5.6; (c) [e]ntry by the Court of the Judgment in the form or substantially in the form attached hereto as Exhibit C; and (d) [t]he Judgment referred to in subparagraph (c) above shall have become the Final Order; and (e) [d]ismissal with prejudice of the State Derivative action." *Id.* ¶ 6.1 (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

b)      Release Provisions

The Settlement Agreement provides that, upon "entry of the Final Order approving the Settlement, Plaintiffs, the Company and all shareholders on whose behalf the claims in the Derivative Actions were brought shall settle, release, compromise and dismiss fully and forever all Released Claims . . . that were brought in the Derivative Actions[.]" *Id.* ¶ 4.1. As stated, claims alleged in the Class Action are "not included in the Released Claims in the Settlement." *Id.* ¶ 4.3.

C.      Attorney's Fees

The Settlement Agreement provides that "Plaintiffs' Counsel may apply for an award of attorneys' fees and reimbursement of expenses in the Federal Derivative Action to compensate them for the benefits conferred upon the Company as a result of the Settlement, up to an amount not to exceed $2.5 million (the "Fee and Expense Award")." *Id.* ¶ 5.1. It also provides that:

> [T]he Settling Parties have agreed that the Company and Individual Defendants will not oppose Plaintiffs' application for a Fee and Expense Award to Plaintiffs' Counsel up to, but not exceeding, $2.5 million to be sought in the Federal Derivative Action, and that: (1) Plaintiffs' Counsel will seek an award of attorneys' fees and expenses only in the Federal Derivative Action; (2) such application shall not exceed $2.5 million; and (3) Plaintiffs' Counsel will not separately seek an award of attorneys' fees and expenses in the State Derivative Action.

*Id.* ¶ 5.1. Attorney's fees that are awarded, if any, will be paid by an insurance carrier that issued a policy to JAKKS. *Id.* ¶ 5.2. If the request for attorney's fees is denied in its entirety, that ruling will have "no impact on the consummation, implementation or Effective Date of the Settlement." *Id.* ¶ 5.6.

D.      Notice to Shareholders

The Settlement Agreement provides that notice "substantially in the form of" the document titled Notice of Proposed Settlement and Final Approval Hearing ("Proposed Notice") attached as Exhibit B will be provided to shareholders of JAKKS. *Id.* ¶ 2.2. The Proposed Notice was published as part of a JAKKS press release. *Id.* As noted, JAKKS also filed a Form-8K with the SEC in which the Proposed Notice, the press release and the Settlement Agreement were disclosed. *Id.* The Proposed Notice is also maintained on the website of Plaintiffs' counsel. *Id.* The Proposed Notice attaches a copy of the Settlement Agreement. *See* Proposed Notice, Dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

86, Ex. B at 41. It also describes the terms of the Settlement Agreement. *See id.* It informs shareholders that Plaintiffs' counsel may seek attorney's fees of up to $2.5 million. *Id.* at 46.

Shareholders that wished to object to the Settlement Agreement were directed to do so by making a filing with the Court no later than 14 days prior to the date of the final approval hearing. Notice, Decl. of Joel Fleming Ex. Q, Dkt. 121-19 at 70. Such objecting shareholders were also directed to serve Plaintiffs' and Defendants' counsel with any written opposition to the Settlement Agreement. *Id.* It stated that shareholders may not appear at the hearing on final approval absent the timely filing of an objection or with leave of the Court. *Id.*

IV.     Analysis

        A.     Plaintiffs' Motion for Final Approval of Shareholder Derivative Settlement (Dkt. 121)

               1.     Legal Standards

Fed. R. Civ. P. 23.1(c) provides that a "derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." "Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." *Id.* Fed. R. Civ. P. 23(e)(2) provides that a proposed settlement may be approved "only after a hearing and on finding that it is fair, reasonable, and adequate." *See also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995) (applying Fed. R. Civ. P. 23(e) to approval of derivative action settlement agreement). There is a "strong judicial policy that favors settlements." *Id.* at 378 (internal quotation marks omitted).

Fed. R. Civ. P. 23(e) requires that a court engage in a two-step process in determining whether to approve a settlement. First, it must make a preliminary determination whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *See Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). At this stage, "the settlement need only be potentially fair." *Id.* In the second step of the process, which occurs only if preliminary approval has been granted, and after the notice to shareholders and the compilation of information about any objections, a court applies similar standards in determining whether final approval should be granted.

A court is to consider and evaluate several factors in an assessment of a proposed settlement. The Ninth Circuit has identified the following non-exclusive factors that may be considered during both the preliminary and final approval processes:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

1) the strength of the plaintiff's case;
2) the risk, expense, complexity and likely duration of further litigation;
3) the risk of maintaining class action status throughout the trial;
4) the amount offered in settlement;
5) the extent of discovery completed and the stage of the proceedings;
6) the experience and view of counsel;
7) the presence of a governmental participant; and
8) the reaction of the class members to the proposed settlement.

*See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Each factor does not necessarily apply to every settlement. Further, other factors may also warrant consideration in a particular case. For example, courts often consider whether the settlement is the product of arm's length negotiations. *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

    2.   Application

    a)   Strength of the Case

Plaintiffs argue that establishing the amount of monetary damages would have "posed significant issues and would have been subject to further litigation." Motion for Settlement Approval, Dkt. 121 at 20. They contend that Plaintiffs' counsel are "aware of no case in which a *Unocal* claim has led to a damages award in favor of plaintiffs." *Id.* Furthermore, Plaintiffs note the extremely high standard for succeeding in a *Unocal* case, noting that summary judgment is often entered against plaintiffs in such cases. *Id.* at 18. Plaintiffs next contend that, if the case were to proceed to trial, Plaintiffs would not be able to seek the corporate governance changes obtained through settlement and would be limited to "monetary damages or equitable relief." *Id.* at 20. Plaintiffs argue that these corporate governance changes "may be more valuable to the Company and its shareholders than any potential monetary award." *Id.* (citing *Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983) ("[W]here, as here, the derivative suit is largely an attack on past corporate management practices . . . the dollar amount of a possible judgment . . . is not the sole, and may well not be the most important, matter to be considered, for the effects of the suit on the functioning of the corporation may have a substantially greater economic impact[.]").

Because this argument is persuasive, this factor favors the approval of the settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

b)      Risk, Expense & Complexity

Plaintiffs argue that "derivative lawsuits are notoriously difficult and unpredictable. . . and are rarely successful." *Id.* at 19 (internal citations and quotation marks omitted). They also claim that such actions are even less likely to succeed where they challenge a transaction that has already closed, rather than a proposed defensive transaction. *Id.* Defendants continue to claim that "at all times, they exercised sound business judgment and acted in good faith, in reliance on the advice of well-qualified financial advisors in a manner they believed to be in the best interest of JAKKS and its shareholders." *Id.* Furthermore, the standard for establishing damages in a *Unocal* case is uncertain, and Plaintiffs state that they are aware of no case in which a *Unocal* claim led to a damage award in favor of plaintiffs. *Id.* at 20.

Because these arguments are persuasive, this factor favors the approval of the settlement.

c)      The Amount Offered in Settlement

Plaintiffs contend that "the settlement provides significant consideration that will benefit the Company and its shareholders" and that "[s]pecial committees of independent directors are one of the most powerful procedural mechanisms available to protect the interests of the corporation and public shareholders from self-interested actions by management." *Id.* at 22. They submit the declaration of Professor Todd Henderson of the University of Chicago Law School, who is presented as an expert on corporate governance.[11] Henderson evaluated the Settlement[12] and found that it will provide "cutting edge governance improvements" that will make JAKKS "a corporate governance leader." *Id.* (quoting Henderson Dec., Dkt. 121-1 at 17, 34). Professor Henderson further opines that the "settlement will have a large positive impact on the market

---

[11] Henderson is the Michael J. Marks Professor of Law & Michael Caster Mamolen Research Scholar at the University of Chicago Law School, where he has been on the faculty for 10 years. He worked for three years as a lawyer and four years at McKinsey & Company advising management and boards on strategy and governance matters. His research and teaching focus on corporate law and governance, as well as securities and financial markets. He has authored more than 30 articles on corporate law and related matters. He is a co-author of a leading securities regulation textbook. He has taught and focused on corporate governance issues for several years. He has taught corporate governance at the Stanford Directors' College. He has also served as an expert on corporate governance in several prior actions in both state and federal courts. Decl. of Prof. M. Todd Henderson, Dkt. 121-1 at 5-6.

[12] Henderson states that the opinion in his declaration is based on his professional experience in corporate governance. He also consulted with plaintiffs' counsel concerning the history of the dispute that led to this Settlement and about the terms of the Settlement Agreement. He states that he also reviewed regulatory filings and various press releases. Decl. of Henderson, Dkt. 121-1 at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |

*(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)*

value of JAKKS," and "if implemented successfully . . . [it] could add $20-$40 million" of value to the Company and its shareholders. *Id.* at 23 (quoting Decl. of Henderson, Dkt. 121-1 at 45).

Plaintiffs also note that on May 14, 2015, an independent analyst with Rockland Capital highlighted the settlement and its potential positive effect on JAKKS. *Id.* (citing Decl. of Fleming Ex. A, Dkt. 121-3). Plaintiffs also state that, since the settlement was announced, activist investor Oasis Management Company Ltd. filed a Form 13D on June 3, 2015, in which it disclosed that it had acquired 12.2% of JAKKS' shares on a fully converted basis (*id.* (citing Decl. of Fleming Ex. C, Dkt. 121-5), and Steelhead Partners, LLC filed a Schedule 13G on June 12, 2015 announcing that it had acquired a 5.9% stake in JAKKS through convertible notes. *Id.* (citing Decl. of Fleming Ex. D, Dkt. 121-6). On June 17, 2015, the CEO of Pipeline Data and Mark Gomes, an analyst with PTT Research, published a report crediting the settlement with renewing activist interest in JAKKS. *Id.* The share price of JAKKS' stock also rose on the news of the settlement. It went from a closing price of $7.62/share on June 2, 2015, to $8.81/share on June 12, 2015. This is a 15.6% increase, which translates to a $27.9 million increase in market value of the company. *Id.*

Because these arguments are persuasive, this factor favors the approval of the settlement.

> d)      Extent of Discovery and the Stage of the Proceedings

This action was filed on February 25, 2014. Prior to the settlement, the parties engaged in discovery and the Court ruled on legal issues concerning the viability of the claims that were brought. Dkt. 57. Plaintiffs' counsel argue that the discovery obtained "provided . . . sufficient information to understand the contours of the case and the challenges posed by continuing the litigation." Motion, Dkt. 121 at 21. During the mediation, the parties exchanged "two rounds of mediation briefs, clarified the parameters of the Parties' dispute and cast the strengths and weaknesses of Plaintiffs' case into sharp relief." *Id.*

Because these arguments are persuasive, this factor favors the approval of the settlement.

> e)      Experience and View of Counsel

Both parties were represented by experienced counsel. "[C]ounsel for all Parties believe that this settlement is in the best interests of the Company." *Id.* This factor favors the approval of the settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

f)      Reaction of the Class Members

Notice was issued on August 24 and 25, 2015. As of September 28, 2015, Plaintiffs reported that no shareholders had filed objections to the settlement. This factor favors the approval of the settlement.

g)      Arm's Length Negotiations

The Settlement Agreement was the product of good faith, arm's length negotiations. The Court finds particularly persuasive that the mediation was presided over by Judge Phillips. *See* Settlement Agreement, Dkt. 86 at 8. This factor favors the approval of the settlement.

*             *             *

All of the relevant factors support the approval of the settlement. Therefore, the Motion for Settlement Approval is GRANTED.

B.      Plaintiffs' Motion for an Award of Attorney's Fees (Dkt. 120)

Plaintiffs's counsel seek an award of $2.5 million in attorney's fees and expenses. As noted, under the terms of the Settlement Agreement, any award up to this amount shall be paid by JAKKS' insurance carrier. Settlement Agreement . ¶¶ 5.1-5.2, Dkt. 86; Motion for Fees, Dkt. 120 at 28. Defendants agreed not to oppose this request and have not done so.

1.      Legal Standard

The substantive state law that applies to the claims that were the basis for actual or potential liability also governs the availability, and determination of the amount, of an award of attorney's fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The *Unocal* claim was the only one that survived the motion to dismiss. It arose under Delaware law. Therefore, that law applies to the assessment of the request for an award of attorney's fees. *Feuer v. Thompson*, No. 10-CV-00279 YGR, 2013 WL 2950667, at *2 (N.D. Cal. June 14, 2013).

Under the "American Rule," "a prevailing party is responsible for the payment of his own counsel fees in the absence of statutory authority or contractual undertaking to the contrary." *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164 (Del. 1989). Thus, "[t]he first question is whether class counsel are entitled, at all, to an award of counsel fees and expenses." *In re Dunkin' Donuts Shareholders Litig.*, No. CIV. A. 10825, 1990 WL 189120, at *5 (Del. Ch. Nov. 27, 1990). "In the realm of corporate litigation, the Court may order the payment of counsel fees

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

and related expenses to a plaintiff whose efforts result in the creation of a common fund or the conferring of a corporate benefit." *Tandycrafts*, 562 A.2d at 1164 (internal citations omitted).

Under Delaware law,

> the Court may order the payment of counsel fees and related expenses to a plaintiff [in a derivative action] whose efforts result in . . . the conferring of a corporate benefit. Such results need not be pecuniary, so long as the litigation produces a *substantial benefit* to the corporation or its stockholders.

*San Antonio Fire & Police Pension Fund v. Bradbury*, No. CIV.A. 4446-VCN, 2010 WL 4273171, at *7 (Del. Ch. Oct. 28, 2010) (emphasis added) (internal citations and quotations removed). *See also Dover Historical Soc'y, Inc. v. City of Dover Planning Comm'n,* 902 A.2d 1084, 1089 (Del. 2006). ("Under the 'common benefit' exception [to the general rule that a party must pay its own counsel fees], a litigant may . . . receive an award of attorneys' fees if: (a) the action was meritorious at the time it was filed, (b) an ascertainable group received a substantial benefit, and (c) a causal connection existed between the litigation and the benefit."); *Chicago Milwaukee Corp. v. Eisenberg*, 560 A.2d 489 (Del. 1989) ("[W]here shareholder litigation confers a substantial benefit upon a corporation and no fund is available to pay for the fees and expenses of plaintiffs' counsel, it is appropriate for the corporation to absorb the costs of plaintiffs' attorneys' fees and expenses."); *Chrysler Corp. v. Dann*, 223 A.2d 384, 386-87 (Del. 1966) ("the rule requires that not only must the action confer some benefit upon the corporation, but, also, that the action, when filed, was meritorious and had a causal connection to the conferred benefit."); *Seinfeld v. Coker*, 847 A.2d 330, 333 (Del. Ch. 2000) ("This Court consistently has held that, in class and derivative actions, plaintiffs' counsel are entitled to an award of attorneys' fees and expenses where their efforts achieve a benefit for the corporation or its shareholders.").

"Courts have recognized that corporate governance reforms provide valuable benefits to corporations and their shareholders." *Feuer*, 2013 WL 2950667, at *2 (applying Delaware law). *See also Tandycrafts*, 562 A.2d at 1165 ("The definition of a corporate benefit . . . is . . . elastic . . . . Changes in corporate policy . . . , if attributable to the filing of a meritorious suit, may justify an award of counsel fees.").

Under Delaware law, courts "consider and weigh the following factors in making an equitable award of attorney fees: 1) the results achieved; 2) the time and effort of counsel; 3) the relative complexities of the litigation; 4) any contingency factor; and 5) the standing and ability of counsel involved. Delaware courts have assigned the greatest weight to the benefit achieved in litigation." *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1254 (Del. 2012) (citing *Sugarland*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

*Industries, Inc. v. Thomas*, 420 A.2d 142 (Del. 1980)). Delaware courts have criticized the use of the lodestar method, particularly in the context of common fund fee awards. *See id.* (noting that in *Sugarland*, the Supreme Court of Delaware "explicitly disapproved the . . . 'lodestar method.'"); *Rosen v. Smith*, No. 7863, 1985 WL 21143, at *2 (Del. Ch. Sept. 23, 1985) ("The courts of Delaware, significantly, do not follow the loadstar or 'Lindy' approach of the federal courts."). However, the lodestar method can serve as a "backstop check," or "a means to evaluate the propriety of the amount of the award" against the amount requested by plaintiffs. *In re Abercrombie & Fitch Co. Shareholders Derivative Litig.*, 886 A.2d 1271, 1274 (Del. 2005); *In re Sauer-Danfoss Inc. Shareholders Litig.*, 65 A.3d 1116, 1139 (Del. Ch. 2011) ("Traditionally, we have used hours worked to calculate an effective hourly rate that can be examined to guard against windfall compensation when awarding large fees."). The lodestar method "may assume greater significance where, as here, the benefit achieved by the settlement cannot be independently quantified." *In re Diamond Shamrock Corp.*, No. CIV.A. 8798, 1988 WL 94752, at *5 (Del. Ch. Sept. 14, 1988).

"The fee award must . . . be reasonable." *Id.* (citing *Richman v. DeVal Aerodynamics,* 185 A.2d 884 (1962)). Ultimately, "the amount of an attorneys' fee award is within the discretion of the court." *In re Plains Res. Inc. S'holders Litig.,* 2005 WL 332811, at *3 (Del.Ch. Feb. 4, 2005).

        2.    <u>Application</u>

            a)    *Sugarland* Factors

                (1)    The Results Achieved

In determining the appropriate fee award, "Delaware courts have assigned the greatest weight to the benefit achieved in litigation." *Theriault*, 51 A.3d at 1254. *See also Rosen*, 1985 WL 21143, at *2 ("It is the result accomplished for the benefit of the stockholders which is the common yardstick by which plaintiff's counsel are compensated."). It is also significant that

> Delaware law recognizes the value of representative litigation. This Court does not hesitate to award large fees to plaintiffs' counsel when they obtain tangible benefits. This Court likewise has granted high six- and low seven-figure fees for purely therapeutic relief . . . when the relief was meaningful.  At the same time, this Court strives to avoid conferring unhealthy windfalls on plaintiffs' counsel. By granting minimal fees when deal litigation confers minimal benefits, this Court seeks to align counsel's interests with those of their clients and encourage entrepreneurial plaintiffs' lawyers to identify and litigate real claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

*In re Sauer-Danfoss*, 65 A.3d at 1140-41.

Fees may be awarded under Delaware law even where "the benefit created by the litigation was meager or speculative" but "[i]n such cases, . . . the Court often discounts the fees accordingly." *In re Golden State Bancorp Inc. Shareholders Litig.*, No. CIV.A. 16175, 2000 WL 62964, at *3 (Del. Ch. Jan. 7, 2000) (citing *Zlotnick v. Metex Inc.,* Del. Ch., C.A. No. 9781, 1989 Del. Ch. LEXIS 159, at *3-*4, Hartnett, V.C. (Nov. 14, 1989)). "In the context of a therapeutic benefit case, fee awards are minimized where the benefit is intangible or limited in duration." *Id.*

"As proponents of the fee application, plaintiffs have the burden of establishing the value of the claimed benefit." *In re Am. Real Estate Partners*, No. 13687, 1997 WL 770718, at *6 (Del. Ch. Dec. 3, 1997). Because "[t]he value of a therapeutic benefit such as the corporate governance reforms provided in this case is not easily translated into monetary terms . . . courts applying Delaware law will compare fees awarded in lawsuits that achieved similar results." *Feuer*, 2013 WL 2950667, at *3. *See also In re Golden State Bancorp*, 2000 WL 62964, at *3 ("In cases generating nonquantifiable, nonmonetary benefits, this Court has juxtaposed the case before it with cases in which attorneys have achieved approximately the same benefits.").[13]

Plaintiffs have cited prior actions in which courts have applied Delaware law in valuing a non-monetary benefit to shareholders in considering an award of attorney's fees. However, they do

---

[13] As the Delaware Court of Chancery has explained:

> To quantify an appropriate fee award, this Court evaluates the qualitative importance of the disclosures obtained. Similar disclosures merit similar fee awards. *See Plains Res.,* 2005 WL 332811, at *5 ("The court awards fees for supplemental disclosures by juxtaposing the case before it with cases in which attorneys have achieved approximately the same benefits." (internal quotation marks omitted)); *In re Dr. Pepper/Seven Up Cos. S'holders Litig.,* 1996 WL 74214, at *5 (Del.Ch. Feb. 9, 1996) ("Fee applications in class actions resulting in nonquantifiable, nonmonetary benefits have generated decisions from this Court that provide guidance for the exercise of . . . discretion."). Consistency promotes fairness by treating like cases alike and rewarding similarly situated plaintiffs equally. Establishing baseline expectations helps plaintiffs' counsel evaluate litigation opportunities and assists parties in negotiating reasonable fee awards. Recognizing the ranges developed through case-by-case adjudication -- often in unreported transcript rulings -- provides sister jurisdictions with helpful guidance when awarding fees in cases governed by Delaware law. Greater uniformity reduces opportunities for forum-shopping and other types of jurisdictional arbitrage, such as litigating in one court and then settling in another or presenting multiple fee applications to multiple courts.

*In re Sauer-Danfoss*, 65 A.3d at 1136.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

not contend that the corporate governance terms of these settlements were the same as, or closely aligned with, those achieved through the settlement in this case.  Motion for Fees, Dkt. 120 at 15-17 (citing *In re Activision Blizzard, Inc. Stockholder Litig.*, 124 A.3d 1025, 1071 (Del. Ch. 2015) at 1071 & n. 30 (Del. Ch. May 20, 2015) ("[e]stablishing an independent Board majority and reducing the stockholder-level control of insiders . . . is a valuable non-monetary benefit. Precedent suggests that an award of $5-10 million [in attorney's fees] could be justified."); *In re Google Inc. Class C S'holder Litig.*, Cons. C.A. No. 7469-CS, tr. at 19-20 (Del. Ch. Oct. 28, 2013) (awarding $8.5 million plus expenses for a "largely corporate governance settlement" in which "the benefits are substantial" and "somewhere between a solid single and a double"); *In re Yahoo! S'holders Litig.*, C.A. 3561-CC, let. op. at 1 (Del. Ch. Mar. 6, 2009) (awarding $8.4 million for "substantial benefit" of amending employee severance plan in a manner that "made it less expensive to sell Yahoo, making the company a more attractive target to potential suitors"); *Minneapolis Firefighters' Relief Assoc. v. Ceridian Corp.,* C.A. No. 2996-CC (Del. Ch. Feb. 25, 2008) (awarding $5.4 million for enabling a potential buyer to present a leveraged recapitalization proposal and eliminating a termination right for the merger partner if a new slate of directors were elected prior to the completion of  a merger); *In re Compellent Techs., Inc.,* 2011 Del. Ch. LEXIS 190 (Del. Ch. Dec. 9, 2011) ($2.3 million fee award warranted where plaintiffs' efforts to reduce anti-takeover measures created an 8% greater likelihood of a "topping" bid to the one already in place, notwithstanding that no such bid materialized); *San Antonio Fire & Police Pension Fund v. Bradbury*, 2010 Del. Ch. LEXIS 218, at *2, 52 (Del. Ch. Oct. 28, 2010) ($2.9 million fee approved to "compensate . . . attorneys for their role in disabling continuing director provisions in two separate debt instruments."); *In re Del Monte Foods Co. S'holders Litig.*, 2011 Del. Ch. LEXIS 94 (Del. Ch. June 27, 2011) ($2.75 million fee in disclosure-only settlement of merger-and-acquisition litigation); *In re LSI Corp.*, No. 9175-VCN (Del. Ch. Jun. 10, 2014) (Transcript Ruling) (Fleming Dec., Ex. L) at 36:24-37:3; 42:23-43:2 ($2.2 million fee award where, "[t]hrough the settlement, the plaintiffs achieved additional disclosures and what, for present purposes, I will call a clarification of the don't ask/don't waive stand-still provision . . . . The text of the agreement was not changed. The defendants interpreted or clarified the agreements to do away with the arguably preclusive aspects.")).

Several cases have found lower fee awards appropriate where a settlement offered only therapeutic benefits. *See Feuer*, 2013 WL 2950667, at *4-5, n.9 (citing *In re Golden State Bancorp,* 2000 WL 62964, at *3, n. 19) (awarding $500,000 and stating that a requested $1.325 million fee award is "vastly higher fee than the typical fee this Court has awarded for settlements providing only therapeutic benefits") (collecting cases involving attorney's fee awards for therapeutic settlements; fee awards ranged from $180,000 to $400,000); *In re Chicago & N.W. Transp. Co. Shareholders Litig.,* 1995 WL 389627, at *5 (Del.Ch. Jun.26, 1995) (finding fee request of $525,000 "disproportionate to the benefit obtained for the class" and at "high end of the range of fee awards for settlements providing only therapeutic benefits," and awarding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|

| Title | Advanced Advisors G. P. v. Stephen Berman, et al. |
|---|---|
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* |

$300,000); *In re Sauer-Danfoss,* 2011 WL 2519210 (range for attorney's fees in disclosure only settlements is $400,000 to $500,000 for one or two meaningful disclosures)).

In considering the issues presented in this action and in these prior ones, it is noteworthy that some courts have considered expert opinions offered by a party "to quantify the value of a therapeutic settlement such as corporate governance changes." *Feuer,* 2013 WL 2950667, at *3 n. 3 (citing *In re Compellent Technologies, Inc. Shareholders Litig.,* 2011 WL 6382523, at *20-21 (Del. Ch. Dec. 9, 2011) ("The calculation does not aspire to mathematical exactitude . . . . The calculation only serves to help establish an order of magnitude within which this Court can craft an appropriate award. Perhaps most important, it aids the Court in resisting overly generous awards by establishing a link between nonmonetary benefits and one measure of economic value. Although the resulting calculation is admittedly rough, scientific precision is not required when awarding fees."); *Unite Nat. Ret. Fund, supra,* 2005 WL 2877899, at *3, 5 ("Plaintiffs' expert, Mr. Monks, opines that the added value to Shell resulting from this settlement agreement is not less than $2.3 billion"); *Mesh v. Goldfield Corp.,* 60 F.R.D. 595, 598 (S.D.N.Y.1973) (accepting estimate of financial analyst offered by defendant, who valued economic benefit of the entire settlement agreement at $422,000, rather than the opinion of plaintiffs' expert, who opined that the estimated benefit was $750,000)).

In this action, Professor Henderson has opined that the value of the settlement, if implemented successfully, could add $20-40 million to the market value of JAKKS. Decl. of Henderson, Dkt. 121-1 at 34. He noted that a survey by McKinsey Global showed a good-governance premium of about 18 percent, which for JAKKS could be as much as $40 million. *Id.* at 11. Another study created a good governance index and found that firms in the top ten percent of the index had market values that exceeded those in the bottom ten percent by approximately 8.5 percent. *Id.* For JAKKS, this premium would amount to approximately $18 million. *Id.* It is difficult to assess exactly how the studies Professor Henderson cites would apply here, as the full increase in value of $18-40 million assumes that the terms of the settlement would move JAKKS from the worst governance to the best governance, and there is no evidence that would support the application of that assumption here. Thus, the $20-40 million range estimate has not been shown to be a precise measure, but one that warrants some weight in the overall assessment of the proposed fee award.

It is also significant that, elsewhere in his declaration, Professor Henderson states that "it is not possible to assign a precise estimate to the value of the corporate governance reforms required by the proposed Settlement in this case." Dkt. 121-1 at 34. However, he opines that "each of the reforms in this case will increase JAKK's corporate governance performance and enable the board to improve and enhance its overall effectiveness in maximizing the value of JAKKS." *Id.* This is consistent with the Court's conclusion above, §§ III, VI(A)(2)(c), *supra,* that if

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|----------|-------------------------|------|-------------------|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

implemented, the Settlement Agreement will lead to significant changes in corporate governance at JAKKS that are responsive to the claims brought by Plaintiffs. Moreover, as noted, independent analysts have praised the settlement (Fleming Decl., Exhs. A, D), and there is some suggestion that activist investors have renewed their interest in the company as a result of the settlement announcement. *Id.* at Exhs. B-D. Plaintiffs also state that JAKKS' share price rose from a closing price of $7.62 per share on June 2, 2015 to $8.81 per share on June 12, 2015. Dkt. 120 at 14.

Taking these considerations into account, "the Court is satisfied that the corporate governance reforms are of significant value to" JAKKS and its shareholders. *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009).

(2)     The Time and Effort of Counsel

Under Delaware law:

> The time and effort expended by counsel serves [as] a cross-check on the reasonableness of a fee award." *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1138 (Del. Ch. 2011). "This factor has two separate but related components: (i) time and (ii) effort." *Id.* "The time (i.e. hours) that counsel claim to have worked is of secondary importance." *Id.* "[M]ore important than hours is effort, as in what plaintiffs' counsel actually did." *Ams. Mining*, 51 A.3d at 1258 (internal quotation marks omitted).

*In re Activision Blizzard*, 124 A.3d at 1074*; see also Rosen*, 1985 WL 21143, at *3 ("Time and hourly rates are of little significance where the award is based on a fund created by the litigation but where there is no monetary recovery or fund created, factors other than the monetary value of the results obtained become critical. Even if no fund is created, time and hourly rates are, however, not the only factors to be given consideration in determining reasonableness of a request for attorneys' fees and time and effort are not even the most significant elements, although they are major elements."); *Seinfeld*, 847 A.2d at 333 (noting the importance of rewarding plaintiffs' counsel who handle lawsuits efficiently and stating that "[o]ne of the historic reasons Delaware judges have been so willing to award substantial attorneys' fees, even after a relatively quick settlement of the case, is that our fee awards are not structured to reward lawyers for needlessly prolonging litigation. Put simply, the Court does not want to be in a position of encouraging the churning of wheels and devoting unnecessary hours to litigation in order to be able to present larger numbers to the Court.") (internal citation omitted).

"Although *Sugarland* explicitly allows courts to take hourly rates into consideration, judges in the Court of Chancery have seldom done so." *Seinfeld*, 847 A.2d at 337-38. *See also id.* at 336

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

("the Court is not forced into making a difficult determination of fees based on hourly rates, which, in the end, may not be commensurate with the value actually created by the attorneys for the shareholders."). However, "[t]he time expended by counsel is considered as a cross-check to guard against windfalls, particularly in therapeutic benefit cases." *In re Sauer-Danfoss*, 65 A.3d at 1136. "Traditionally, we have used hours worked to calculate an effective hourly rate that can be examined to guard against windfall compensation when awarding large fees." *Id.* at 1138-39. "Oftentimes, when this Court determines fee awards in a therapeutic benefit case, it uses a *quantum meruit* analysis. Under such an analysis, the Court adds a premium to the plaintiffs' attorneys['] typical noncontingency fee in proportion to the benefit the plaintiffs' attorneys achieved for their clients. But Delaware courts do not focus on hours expended as the essential inquiry . . . ." *In re Golden State Bancorp*, 2000 WL 62964, at *3.

"Although the effort component is the primary consideration, the Court will consider the time/hours claimed by counsel first." *Feuer*, 2013 WL 2950667, at *5. Plaintiffs state that through September 28, 2015, with the filing of the Motion for Fees, Plaintiffs had spent 1609.5 hours on this litigation. Motion for Fees, Dkt. 120 at 20. Given this hour estimate and Plaintiffs' requested $2.5 million fee award, less $143,186.17 in expenses, Plaintiff' counsel request over $1464/hour. *Cf. In re Orchard Enterprises, Inc.Stockholder Litig.*, No. CIV.A. 7840-VCL, 2014 WL 4181912, at *9 (Del. Ch. Aug. 22, 2014) ("An effective hourly rate of $658.59 for the timekeepers in this action strikes me as a reasonable level of compensation for a case of this nature in this jurisdiction. It is above what I would expect the blended hourly rate to be for a team of partners, associates, and paralegals working on an hourly basis, and it therefore provides a premium to induce monitoring behavior and compensate Plenary Counsel for their risk. At the same time, the level of compensation is not so high -- again compared to lawyers in this jurisdiction working on a non-contingent hourly basis -- as to represent an unwholesome windfall that would encourage the filing of non-meritorious and socially costly suits.").

The prior order in this action in which preliminary approval of the proposed fee award was denied noted that,

> At this stage of the proceedings, Plaintiffs' counsel acknowledge that applying their proposed hourly rates to the time spent on the litigation generates a total fee amount of $927,211. [*See* Settlement Agreement ¶ 5.1, Dkt. 86 at 20-21.] Plaintiffs' counsel have presented no detailed information to support this fee request. No declaration by any attorney has been presented in which evidence has been offered about the nature of the work performed, the appropriateness of the hours worked, the unique nature of issues presented or the need for multiple attorneys to work on the same projects.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | | Date | November 15, 2016 |
|---|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | | |

Dkt. 103 at 15. In the current Motion for Fees, Plaintiffs have estimated total fees at $1,080,574.50. Dkt. 120 at 35, 38. Thus, a fee award of $2.5 million less $143,186.17 in costs seeks a premium of approximately $1.28 million. This corresponds to approximately 2.2 times the amount that would result from a consideration of the hours worked pursuant to Plaintiffs' proposed hourly rates. Therefore, a careful assessment of the time spent and results achieved is warranted as a cross-check to ensure the appropriateness of any award.

(a)      *Reasonable Hourly Rate*

At the preliminary approval stage, the information provided by Plaintiffs' counsel was summarized in the following chart:

| Name and Firm | Experience | Rate/Hr |
|---|---|---|
| **Jeffrey Block (Block & Leviton)** | Co-founding partner of Block & Leviton. Dkt. 98, App'x B at 14. Graduated *cum laude* from Brooklyn Law School in 1986. *Id.* Worked on many class actions. *Id.* | $795 |
| **Jason Leviton (Block & Leviton)** | Co-founding partner of Block & Leviton. Dkt. 98, App'x B at 16. Does not state year of law school graduation. *See id.* Has worked on many class actions. | $650 |
| **Joel Fleming (Block & Leviton)** | Associate at Block & Leviton. Graduated *cum laude* from Harvard Law School. Dkt. 98, App'x B at 23. Does not state the year of graduation. | $425 |
| **Julie Ledwig (Block & Leviton)** | Paralegal at Block & Leviton. No information provided about background or qualifications. *See* Dkt. 98. | $225 |
| **Stephanie Walker (Block & Leviton)** | Paralegal at Block & Leviton. No information provided about background or qualifications. *See* Dkt. 98. | $175 |
| **Laurence Paskowitz (Paskowitz Law Firm P.C.)** | "Senior Attorney." Graduated from Hofstra Law School (1983). Dkt. 98, App'x C at 27. Has worked on many derivative actions. | $725 |
| **Roy Jacobs (Roy Jacobs & Associates)** | Principal of Roy Jacobs & Associates. Dkt. 98, App'x D at 32. Graduated from Brooklyn Law School (1975) *(cum laude)*. *Id.* Has prior experience with shareholder derivative actions. *Id.* | $675 |

Dkt. 103 at 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

Considering "(i) the description of the work performed by each attorney; (ii) the quality and nature of the work performed during the course of the litigation in the form of filings with the Court by Plaintiffs' counsel; (iii) the Court's assessment of the proposed hourly rates based on its broad experience with hourly rates charged in this District; (iv) the novelty and complexity of the issues presented; (v) the expertise and prior experience of counsel; (vi) the extent to which the litigation precluded other employment; (vii) that the work was performed on a contingency basis; and (viii) any unique benefits conferred on JAKKS and its shareholders that justify the application the 2.5 multiplier to the product of hourly rates and hours worked[,]" the prior order concluded that the following hourly rates were reasonable:

| Reasonable Hourly Rates Based on Preliminary Review | |
|---|---|
| **Attorney/Paralegal** | **Rate ($/hour)** |
| Block (Partner) | $700 |
| Fleming (Associate) | $400 |
| Jacobs (Partner) | $600 |
| Lake (Partner) | $575 |
| Ledwig (Paralegal) | $175 |
| Leviton (Partner) | $575 |
| Paskowitz (Partner) | $675 |
| Walker (Paralegal) | $175 |

Dkt. 103 at 16.

The prior order permitted Plaintiffs' counsel to submit additional evidence to support any proposed higher rate(s). *Id.* Plaintiffs' counsel have done so. They state that Ledwig has been a paralegal since 2006, and has worked for large law firms and the U.S. Department of Justice. Counsel also cited to Dkt No. 98, Appendices B, C, and D, which provide information about the qualifications of Block, Leviton, Fleming, Paskowitz, and Jacobs. Lake provided a declaration in which he states that he is the principal of his solo practice and served as liaison counsel in this action. He also states that he was admitted to practice in California in 1995, and remains in good standing. He states that he graduated from the University of San Francisco School of Law in 1995, and practices in federal and state courts. He adds that he worked less than 40 hours on this matter and that he does not have a regular hourly rate that applies in contingent litigation. Consequently, he seeks to have any hourly rate used to analyze his work in this matter based on those of comparable attorneys with complex litigation experience similar to his own. Decl. of Lake, Dkt. 120-6 (citing *Andresen v. Int'l Paper Co.*, 2015 U.S. Dist. LEXIS 75912, *35-36 (C.D. Cal. June 10, 2015) ($750 hourly rate approved for lawyer who had practiced for 20 years)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

Plaintiffs' counsel also state that their clients have agreed to pay their hourly rates. Motion for Fees, Dkt. 120 at 27. They add that other courts have also accepted these rates. *Id.* (citing *In re: Swisher Hygiene, Inc., Securities and Derivative Litigation*, 3:12-md-02384-GCM, (D.N.C.) at Dkt. 97-2 at 4 (July 9, 2014) (listing Block's and Leviton's rates as $795/hr and $650/hr respectively) and Dkt. 104 (accepting lodestar calculation and awarding fees, based on percentage of common fund, resulting in 1.6 multiplier); *Geare v. Begley, et al.*, 11-cv-9074 (JJT) (N.D. Ill.) at Dkt. 82-7 (Dec. 31, 2014) (listing rates in derivative litigation for Paskowitz and Jacobs as $700/hr and $695/hr respectively for case that began in 2011) and Dkt. 89 (Jan. 23, 2015) (awarding fee representing 1.53 multiplier of lodestar based on these rates, and other similar rates of co-counsel)). Plaintiffs contend that these rates are comparable to those charged by other firms with offices in Los Angeles. Dkt. 120 at 27. Plaintiffs note that some partners at the firms who represented Defendants in this matter charged hourly rates of approximately $1000. *Id.* at 27-28.

The new information provided by Plaintiffs' counsel does not alter the Court's prior assessment of appropriate rates for the work performed in this action by Plaintiffs' counsel.

> (b)    Hours and Fees Associated with Filing the Complaint

Five complaints were filed in this action. Compl., Dkt. 1; *La. Police Ret. Sys. v. Berman*, No. 2:14-cv-1670-JAK-SS (C.D. Cal. Mar. 6, 2014) (Compl., Dkt. 1); FAC, Dkt. 20; Proposed Second Amended Complaint, Dkt. 80-1, Ex. A; Gusinsky, Dkt. 1. In the Motion for Fees, Plaintiffs' counsel identified a figure for this work of $173,985.75. That request is summarized in the following table:

| *Drafting, Reviewing and Filing the Complaints* | | | |
|---|---|---|---|
| **Attorney/Paralegal** | **Rate ($/hour)** | **Hours** | **Requested Fee** |
| Block (Partner) | $795 | 37.6 | $29,892.00 |
| Fleming (Associate) | $425 | 2.9 | $1,232.50 |
| Jacobs (Partner) | $675 | 79.2 | $53,460.00 |
| Lake (Partner) | $625 | 17.2 | $10,750.00 |
| Paskowitz (Partner) | $725 | 108.05 | $78,336.25 |
| Walker (Paralegal) | $175 | 1.8 | $ 315.00 |
| | **Total Hours:** | 246.75 | |
| | **Total Fees:** | | **$173,985.75** |

Dkt. 120 at 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

Given the reasonable hourly rates that have been adopted, when applied to this work, the total would be reduced to $158,138.80.

The prior order requested additional information from Plaintiffs' counsel to justify the amount of time spent on the complaints. As stated there:

> First, no information is presented as to the decision that four partners from three different law firms would devote time to the drafting of the various complaints, and why this was efficient and cost effective. Second, only one of the four claims asserted in the operative complaint in this action (the FAC) survived Defendants' motion to dismiss. No explanation has been offered as to why it is appropriate to include time devoted to the drafting of the complaints as to claims that did not succeed. Finally, little explanation is presented as to the reasonableness of expending 248.15 hours on drafting these complaints. Assuming a 40-hour work week, this would be the equivalent of about six weeks of time by one person. If a 50-hour work week were assumed, it would be the equivalent of about five weeks. If substantial fact-gathering and legal analyses were undertaken, further information must be provided. In any supplemental submission, counsel shall also balance the need for the time spent with the claims of expertise in this area of practice, including the ability to use, as models, complaints drafted in prior cases.

*Id.*

In response to these statements, Plaintiffs contend that because "*Unocal* claims turn on the totality of the peculiar facts and circumstances of each case[,] . . . a thorough investigation of the claims and drafting a unique and detailed complaint was essential to plead sufficient facts to establish demand futility and state a claim on the merits." Motion for Fees, Dkt. 120 at 18. In response to the concern about the need to strike a "balance for the time spent with the claims of expertise in this area of practice, including the ability to use, as models, complaints drafted in prior cases" (Dkt. 103 at 17), Plaintiffs claim that "no other complaint could provide a model to set forth the unique facts and circumstances of this case and the facts supporting demand futility in this action." Dkt. 120 at 18. Plaintiffs state that they put in this effort because they anticipated that Defendants would challenge the claims with one or more motions to dismiss.

This explanation offers limited support for the amount of time spent in drafting the complaints, and the need to have several attorneys involved. It is considered as part of the overall analysis of the fee request.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

(c)     *Hours and Fees Associated with Discovery and Related Conferences*

With respect to work on discovery and related conferences pursuant to Fed. R. Civ. P. 16 and 26, Plaintiffs' counsel identified the following time, which when applied to the corresponding hourly rates, resulted in a total of $181,634.50:

| *Discovery and "Rule 16/26 Conference Activities"* | | | |
|---|---|---|---|
| **Attorney** | **Rate ($/hour)** | **Hours** | **Requested Fee** |
| Block (Partner) | $795 | 65.6 | $52,152.00 |
| Fleming (Associate) | $425 | 30.2 | $12,835.00 |
| Jacobs (Partner) | $675 | 26.8 | $18,090.00 |
| Lake (Partner) | $625 | 1.9 | $1,187.50 |
| Ledwig (Paralegal) | $225 | 1.3 | $ 292.50 |
| Paskowitz (Partner) | $725 | 133.9 | $97,077.50 |
| | **Total Hours:** | **273.2** | |
| | **Total Fees:** | | **$181,634.50** |

Dkt. 120 at 31-32.

When the reasonable hourly rates previously discussed are applied to these hours, the amount would be reduced to $165.782.50. *Id.* at 18.

In addition to the work on discovery and "Rule 16/26 Conference Activities," Plaintiffs reported spending 13.5 hours associated with "discovery motions." Dkt. 120 at 32. Plaintiffs' counsel was asked to provide more details about that work. *Id.* at 17-18. Plaintiffs' counsel was also asked to explain the reasonableness of the time spent on discovery and why "it was appropriate and reasonable for approximately 86% of the time to have been spent by Partners whose hourly rates are substantially higher than that of the single associate assigned to the matter." Dkt. 103 at 18.

In response, Plaintiffs state that they

sought third-party discovery from Clinton, Oaktree, Merrill and other non-parties with relevant information. Defendants and third parties produced over 1,800 pages of documents which were reviewed and analyzed in preparation for mediation. Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

initially refused to produce documents under Rule 26 as they intended to file a motion to dismiss for lack of subject matter jurisdiction and Plaintiff[s] drafted a motion to compel that was not filed as Defendants filed their motion to stay discovery first. Plus, attorney Paskowitz, who had experience litigating against JAKKS in a past case, undertook the initial review of the documents as it was believed he could more quickly cut to the heart of the key documents and information, which he did.

Motion for Fees, Dkt. 120 at 20 n. 11.

Plaintiffs also noted that

Delaware courts actively encourage firms to rely heavily on senior attorneys rather than less-efficient junior attorneys. *See* [*In re*] *Activision* [*Blizzard, Inc. Stockholder Litig.*], 2015 Del. Ch. LEXIS 140, at *128 [(Del. Ch. May 20, 2012)] (lauding decision not to use "a horde of junior timekeepers"; it was more efficient for "senior lawyers … to take all of the depositions, work with the expert, and immerse themselves in all facets of the case."). And the Ninth Circuit continues to discourage second-guessing of plaintiffs' counsel's staffing. *See, e.g.*, *Lemus v. Burnham Painting & Drywall Corp.*, 426 Fed. Appx. 543, 546 (9th Cir. 2011) ("We are . . .  troubled with the district court's apparent decision to reduce fees based on the staffing decisions of Plaintiffs' attorneys. The district court reasoned that Plaintiffs 'created an excess of fees' by relying primarily on 'senior attorneys for the majority of tasks.' . . . . But this assignment of task decisions is usually left up to the law firm absent evidence of being unreasonable.").

*Id.* at 22 n. 14.

Plaintiffs argue that "there is no 'one size fits all' approach to litigation" (*id.* at 21) and that "the traditional pyramid structure -- junior associates performing work, reviewed by senior associates and then partners -- may work for some, it is not appropriate for all firms or for all cases." *Id.*; *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114-15 (9th Cir. 2008) ("the district court may not set the fee based on speculation as to how other firms would have staffed the case."). *See also* Expert Declaration of John. T. Bostelman, Dkt. 120-2 (expert opinions concerning attorney's fees and their relationship to law firm structure, staffing and efficiency); Declaration of Jeffrey Block ("Decl. of Block"), Dkt. 120-3. Plaintiffs' counsel argues that because this was a contingency case, there was no incentive to spend more time than necessary on any matters.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | | Date | November 15, 2016 |
|---|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | | |

> (d)    *Hours and Fees Associated with Experts and Damages Analysis*

With respect to time spent on experts and the analysis of damages, Plaintiffs' counsel identified the following time, which when applied to the corresponding hourly rates, resulted in a total of $37,573.50. It is summarized in the following table:

| Experts and Damages Analysis | | | |
|---|---|---|---|
| **Attorney** | **Rate ($/hour)** | **Hours** | **Requested Fee** |
| Block (Partner) | $795 | 12.3 | $9,778.50 |
| Fleming (Associate) | $425 | 1.4 | $ 595.00 |
| Jacobs (Partner) | $675 | 1.2 | $ 810.00 |
| Paskowitz (Partner) | $725 | 36.4 | $26,390.00 |
| | | **Total Hours:** | **51.3** | |
| | | **Total Fees:** | | **$37,573.50** |

Dkt. 20 at 32-33.

When the reasonable hourly rates previously discussed are applied to these hours, the amount would be reduced to $34,460.

In the prior order, Plaintiffs were invited to explain the basis for this request:

> First, Plaintiffs' counsel concede that "[m]onetary recoveries in *Unocal* cases are rare" and that they "are aware of no case in which a *Unocal* claim has led to a damages award." Dkt. 87 at 17. Therefore, additional information is required to explain the reasonableness of the time spent on this issue. Second,  an explanation of the decision to have 97% of the work performed by partners should be provided.

*Id.* at 19.

In their response, counsel state that courts defer to the decisions by plaintiffs' counsel regarding their work with potential expert witnesses. Motion for Fees, Dkt. 120 at 23 (citing *Arbitrium Handels AG v. Johnston*, 1998 Del. Ch. LEXIS 41, at *13 (Del. Ch. Mar. 23, 1998) ("For a Court to second-guess . . .  an attorney's judgment concerning whether to retain an expert for a specific purpose, is hazardous and should whenever possible be avoided.")). Plaintiffs' counsel then observes that they

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

would justly have been subject to criticism had they failed to retain a damages expert and aggressively threaten defendants with a damages award. While damages may be difficult to obtain in a *Unocal* case, there is nothing that makes such an award impossible. *See Bolton v. Tesoro Petroleum Corp.*, 871 F.2d 1266, 1274 (5th Cir. 1989) (although plaintiff did not win damages in similar case, issue was sent to the jury). And, by not even *attempting* to obtain a monetary award, counsel would have failed to zealously represent their clients.

*Id.*

> (e)    Hours and Fees Associated with Mediation and Settlement-Related Activities

With respect to time spent on mediation and settlement related activities, Plaintiffs' counsel identified the following time, which when applied to the corresponding hourly rates, resulted in a total of $259,054. It is summarized in the following table:

| Mediation and Settlement-Related Activities | | | |
|---|---|---|---|
| **Attorney** | **Rate ($/hour)** | **Hours** | **Requested Fee** |
| Block (Partner) | $795 | 117.2 | $93,174.00 |
| Fleming (Associate) | $425 | 76.9 | $32,682.50 |
| Jacobs (Partner) | $675 | 27.8 | $18,765.00 |
| Lake (Partner) | $625 | 14.5 | $9,062.50 |
| Ledwig (Paralegal) | $225 | 14.7 | $3,307.50 |
| Leviton (Partner) | $650 | 79.5 | $51,675.00 |
| Paskowitz (Partner) | $725 | 69.5 | $50,387.50 |
| | **Total Hours:** | **400.1** | |
| | **Total Fees:** | | **$259,054.00** |

Dkt. 120 at 33-34.

When the reasonable hourly rates previously discussed are applied to these hours, the amount would be reduced to $233,015.

In the prior order, Plaintiffs were invited to explain the basis for this request, including information "as to the reasonableness of the expenditure of approximately 400 hours by six attorneys." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

Plaintiffs' counsel has responded by stating that it spent considerable time in discovery "persuading Defendants to produce the necessary documents to prepare for the agreed-to mediation. The parties engaged in lengthy letter writing campaign and numerous meet-and-confer conversations to hash out what documents would be produced, and when." Motion for Fees, Dkt. 120 at 19. Plaintiffs state that senior attorneys spent time reviewing and analyzing key documents to prepare for the mediation, specifically Board minutes, investment banker books and analyses of JAKKS and its financials. *Id.* at 19-20.

Plaintiffs' counsel states that the mediation required them to draft a 25-page statement with citations to evidence, as well as a ten-page reply statement.

> The mediation statements required each side to, essentially, present their case to Judge Phi[l]lips to demonstrate the strength of their case and weakness of the other side. Not only was considerable time and effort devoted to drafting Plaintiff[s]'s opening statement, but considerable time was spent reviewing, analyzing and responding to Defendants' statements. Plus, a number of calls were held with Judge Phi[l]lip's office to discuss the case and the parties' positions prior to actually attending the mediation session itself.

*Id.* at 20 n. 12.

> (f)    Hours and Fees Associated with Opposing the Motion for Judgment on the Pleadings

With respect to time spent on the opposition to Defendants' motion for judgment on the pleadings, Plaintiffs' counsel identified the following time, which when applied to the corresponding hourly rates, resulted in a request of $48,686.50. Dkt. 103 at 20. That opposition was presented in a two-page filing (Dkt. 79) and a ten-page motion for leave to amend, Dkt. 80. There was no hearing on that motion. The following table summarizes the request:

| *Opposition to Motion for Judgment on the Pleadings* | | | |
|---|---|---|---|
| **Attorney** | **Rate ($/hour)** | **Hours** | **Requested Fee** |
| Block (Partner) | $795 | 25.7 | $20,431.50 |
| Fleming (Associate) | $425 | 23.6 | $10,030.00 |
| Lake (Partner) | $625 | 2.2 | $1,375.00 |
| Ledwig (Paralegal) | $225 | 1.1 | $ 247.50 |
| Paskowitz (Partner) | $725 | 22.9 | $16,602.50 |
| | **Total Hours:** | **75.5** | |
| | **Total Fees:** | | **$48,686.50** |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | | Date | November 15, 2016 |
|---|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | | |

Dkt. 120 at 33.

When the reasonable hourly rates previously discussed are applied to these hours, the amount would be reduced to $44,435. *Id.*

Plaintiffs were asked to provide additional evidence "as to the reasonableness of the expenditure of approximately 75 hours by four attorneys as well as the allocation of work between partners and the sole associate." Dkt. 103 at 20. Plaintiffs did not respond to this question specifically, but as noted above stated in a footnote that "Delaware courts actively encourage firms to rely heavily on senior attorneys rather than less-efficient junior attorneys," and the Ninth Circuit discourages courts from second-guessing plaintiff's staffing decisions. Dkt. 120 at 22 n. 14.

> (g)    *Hours and Fees Associated with Opposing the Motion to Dismiss the FAC*

With respect to time spent on the opposition to Defendants' motion to dismiss the FAC, Plaintiffs' counsel identified the following time, which when applied to the corresponding hourly rates, resulted in a request of $196,141.75. The following table summarizes the request:

| Opposition to Motion to Dismiss | | | |
|---|---|---|---|
| **Attorney** | **Rate ($/hour)** | **Hours** | **Requested Fee** |
| Block (Partner) | $795 | 78.9 | $62,725.50 |
| Fleming (Associate) | $425 | 35.3 | $15,002.50 |
| Jacobs (Partner) | $675 | 33.8 | $22,815.00 |
| Lake (Partner) | $625 | 2.7 | $1,687.50 |
| Ledwig (Paralegal) | $225 | 1 | $ 225.00 |
| Paskowitz (Partner) | $725 | 128.45 | $93,126.25 |
| Walker (Paralegal) | $175 | 3.2 | $ 560.00 |
| **Total Hours:** | | 283.35 | |
| **Total Fees:** | | | **$196,141.75** |

Dkt. 120 at 31. Only the *Unocal* claim, which was one of the four causes of action, survived the motion to dismiss. Dkt. 57.

When the reasonable hourly rates previously discussed are applied to these hours, the amount would be reduced to $178,621.30. *Id.* at 21. The prior order sought additional information as to this request:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

First, an explanation as to the appropriateness of applying 283.35 hours when only one of the asserted claims survived the motion is necessary. Second, the reasonableness of having time spent by five attorneys must be addressed. Third, the reasonableness of the allocation of the work between the partners and the associate whose hourly rate was substantially lower must be addressed.

*Id.*

In response, Plaintiffs stated:

Mr. Paskowitz spent considerable time responding to the motion to dismiss the *Unocal* claim given his past experience in litigating such claims. Mr. Block was designated to argue the motion before the Court and spent consider time preparing for the argument including reading the multitude of case[s] cited by the parties. Most of the hours were devoted to the *Unocal* claim but, we respectfully submit, if counsel assert claims that are closely related to successful claims but eventually dismissed and courts parse through that time and refuse to compensate it, then it will chill plaintiffs' attorneys' from asserting claims on behalf of their clients and being zealous advocates for them. Plus, as cited, a typical motion to dismiss on the defense side can cost upwards of $1 million in legal fees -- here Plaintiff[s]'s counsel devoted less than $200,000 in time. And, even though the claims were dismissed, the settlement addresses the issues underlying those claims, thus making them not "unsuccessful" as that term has been defined in federal fee jurisprudence.

Motion for Fees, Dkt. 120 at 19 n. 10.

Plaintiffs' counsel also argue that relief was obtained in the settlement for certain claims that had been dismissed:

(1) the contribution claims led to the *Unocal* claims; (2) the dismissed claim over Berman's compensation was not abandoned, but led to the settlement term linking CEO compensation to stock price; (3) the contribution claims led to settlement provisions improving forecasting and budgeting; and (4) the related-party/Dr. Soon claims led to a settlement provision requiring an independent committee review of related-party transactions.

*Id.* at 23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
| --- | --- | --- | --- |
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

From this, counsel argues that it is appropriate to provide a fee award that is based in part on the assertion of these claims. *Id.* at 23-24 (citing *Globis Capital Partners, LP v. Safenet, Inc.*, No. 2722-VCS (Del. Ch. Dec. 20, 2007); *In re Atheros Communications, Inc. Shareholder Litigation*, C.A. No. 6124-VCN (Del. Ch. Feb. 6, 2012)). They also note that

> Defendants, represented by one for the top firms in the country, vigorously attacked the complaint in support of dismissal. They cited no less than eighty cases in support of their motion to dismiss in arguing why Plaintiff[s] did not state a claim under *Unocal*. Responding to and distinguishing each case and preparing to argue the motion to dismiss required thorough preparation.

*Id.* at 19.  Furthermore,

> [o]f the 110 substantive paragraphs in the consolidated complaint, at least 78 were related to the breach of fiduciary duty claims that were ultimately upheld . . . . Similarly, 22 of 25 pages in Plaintiffs' opposition to the motion to dismiss related to the breach of fiduciary duty claims that were ultimately upheld.

*Id.* at 24.

> (h)    Hours and Fees Associated with Factual Updates, Review and Analysis

With respect to time spent on factual updates, review and analysis, Plaintiffs' counsel identify a total of $3,913. Dkt. 120 at 30-31. These fees were generated by Paskowitz (4 hours) and Jacobs (1.5 hours). *Id.*[14] When the reasonable hourly rates previously discussed are applied to these hours, the amount would be reduced to $3,700. Plaintiffs were asked to provide additional information regarding the nature of the work performed. Dkt. 103 at 21. They did not do so.

> (i)    Fees Associated with Travel

With respect to time spent on travel, Plaintiffs' counsel identify $37,495.00. Dkt. 120 at 35. These fees included past travel by Block (8 hours), Leviton (6.5 hours) and Fleming (17.2 hours).

---

[14] Appendix A to Plaintiff's Motion for Fees appears to double-count work by Paskowitz on factual updates. *Compare* Appendix A, Table 1, Tasks 1 and 3, Dkt. 120-1 at 30-31 (showing a total of 6.5 hours on review/analysis of class case/factual updates) *with* Appendix B, Table 2, Paskowitz, Laurence, Dkt. 120-1 at 37 (showing 1.5 hours on review/analysis of class case and 2.5 hours on factual updates). However, Plaintiffs' fee request reflects the correct number of hours.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

*Id.* They also included the projected travel to Los Angeles for the final approval hearing by Jacobs (14 hours) and Paskowitz (14 hours). When the reasonable hourly rates previously discussed are applied to these hours, the amount would be reduced to $34,067.50. *Id.*

Plaintiffs were asked to provide additional information regarding whether it is appropriate or customary to charge for travel time, whether the travel time was during regular work hours, and whether work was performed during the travel time. *Id.* Plaintiffs state that the travel time reflects time spent on travel necessary for this case alone and was independent of time spent on substantive work. Motion on Fees, Dkt. 120 at 38.

> (j)   Activities Post-May 18, 2015 (Fee Submission and Final Approval Papers)

Plaintiffs' counsel identify additional time spent in connection with submissions as to attorney's fees as well as  final approval since their most recent fee request was filed on May 18, 2015. These new time entries resulted in a total fee request of $133,763.50:

| Activities Post-May 18, 2015 (Fee Submission and Final Approval Papers) | | | |
|---|---|---|---|
| Attorney | Rate ($/hour) | Hours | Requested Fee |
| Block (Partner) | $795 | 42.3 | $33,628.50 |
| Fleming (Associate) | $425 | 78.2 | $33,235.00 |
| Jacobs (Partner) | $675 | 19.2 | $12,960.00 |
| Paskowitz (Partner) | $725 | 74.4 | $53,940.00 |
| Total Hours: | 283.35 | | |
| Total Fees: | | | $133,763.50 |

When the reasonable hourly rates previously discussed are applied to these hours, the amount would be reduced to $122,630.00.

Block submitted a declaration attached to the Motion for Fees in which he states that the "vast majority" of Fleming's post-May 18, 2015 work "was devoted to preparing the fee application, the final approval brief, and the voluminous supporting papers." Decl. of Block at ¶ 77. Block stated that his own time

> included review and proposed revisions of the fee brief and the final approval brief, review of the expert briefs supporting the fee application and final approval motion, consultation with Mr. Paskowitz regarding the emergence of a new activist investor and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

our response to that development, and extensive discussions regarding the content of the notice issued to shareholders.

*Id.* at ¶ 78.

Similarly, Paskowitz stated that the tasks on which he spent time after May 18, 2015 "were primarily related to working with experts, preparing and editing fee and settlement approval briefs, briefing and communications re settlement and notice procedures, preparation of this Declaration, and related research." Declaration of Laurence D. Paskowitz ("Decl. of Paskowitz"), Dkt. 120-4 at ¶ 76. Jacobs stated that he spent time working with Plaintiffs' expert on staffing and various other "Settlement-Related Activities, including review of and comment upon the draft Fee Brief, review and analysis of the Court's July 12, 2015 Order, and preparation of this detailed Declaration explaining in detail why the time I spent on this litigation was necessary and appropriate." Declaration of Roy L. Jacobs ("Decl. of Jacobs"), Dkt. 120-5 at ¶¶ 31-32.

*(k)      Risk and Opportunity Costs*

With the foregoing adjustments to Plaintiffs' proposed hourly rates, Plaintiffs' lodestar would equal $982,260. The proposed attorney's fee award of $2.5 million is more than 2.5 times that amount. As noted, the fee request if granted at the rate Plaintiffs request would reflect a multiplier of approximately 2.2 times the amounts discussed above. That Plaintiffs' counsel worked on a contingency basis is significant under Delaware law. There was no assurance at the time that they began the representation of Plaintiffs that they would receive any compensation. Although no specific evidence has been submitted, it is also reasonable to consider the possibility that, because Plaintiffs' counsel was engaged in this matter, it may have foregone opportunities to work on other ones. Plaintiffs' counsel argue that such an enhancement is appropriate in light of the unique and substantial benefits obtained for JAKKS and its shareholders. In support of this position, they argue that fees have been enhanced in similar cases and that the fees here will be paid by the insurer of JAKKS.

The prior order sought additional information with respect to the potential use of a multiplier:

There is no information provided to support the claim that the results achieved here have been unique or that the efforts of counsel have been such that a multiplier is warranted. At this time, no statement has been provided by Judge Phillips on this issue, although this possibility was mentioned by counsel at the hearing. Given that a large award to counsel could raise issues as to whether the overall terms of settlement are fair and beneficial to shareholders, evidence as to the basis for the enhancement is required.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

Dkt. 103 at 22.

Plaintiffs attached a declaration from Judge Phillips to the Motion for Fees. Declaration of the Hon. Judge Layn Phillips (Ret.) ("Judge Phillips Decl."), Dkt. 120-1. There, Judge Phillips stated

> It was apparent to me from the lengthy submissions and written and oral presentations made by Plaintiffs' Counsel and Defendants' Counsel before and during the mediation that all counsel had each performed a thorough examination of the facts underlying the action and analyzed it to determine appropriate case valuations. Plaintiffs' Counsel and Defendants' Counsel were well informed on the current law and provided legal research and analysis of the relevant law. It was also apparent to me that considerable work was done by Plaintiffs' Counsel and Defendants' Counsel to prepare the case for mediation.

*Id.* at ¶ 6. He also stated

> It is apparent from the submissions and presentations made by Plaintiffs' Counsel before and during the mediation session, as well as from my numerous discussions with them, that Plaintiffs' Counsel performed a thorough examination of the merits of the claims in this action as well as the potential for a monetary recovery from the Defendants. It is also my opinion that Plaintiffs' Counsel performed substantial work and effort in preparing the case for mediation and in presenting their claims in such a way to produce a valuable settlement to benefit JAKKS and its shareholders.

*Id.* at ¶ 10.

Counsel states that granting the request of $2.5 million would be the equivalent of an hourly rate of approximately $1464. Plaintiffs argue that "Delaware courts frequently award fees resulting in a similar hourly rate for far more modest results." Motion for Fees, Dkt. 120 at 21 (citing *Minneapolis Firefighters' Relief Association.*, C.A. Nos. 2996-CC and 3012-CC (implied hourly rate of over $1850); *Olson v. ev3, Inc.*, 2011 Del. Ch. LEXIS 34 (Del. Ch. Feb. 21, 2011) (implied hourly rate of $1870); *Globis Capital Partners, LP v. Safenet, Inc.*, No. 2722-VCS (Del. Ch. Dec. 20, 2007) (implied hourly rate of approximately $1500)).

Delaware courts often consider risk and related opportunity costs in determining whether to approve an attorney's fee award that compensates attorneys at a premium over a reasonable hourly rate. *See, e.g., Seinfeld*, 847 A.2d at 338 (a $2600 per hour rate "appears to be much more than necessary to maximize future plaintiffs' incentives to bring meritorious cases and to litigate them efficiently"); *In re Golden State Bancorp*, 2000 WL 62964, at *3 (a $500 per hour rate was appropriate given modest results and reflected a "modest risk premium over the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | | Date | November 15, 2016 |
|---|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | | |

compensation that plaintiffs' attorneys command in a noncontingency undertaking"). Risk is a separate *Sugarland* factor, and is considered in greater detail below.

> (l)   Effort

"In contrast with other jurisdictions, Delaware courts avoid the tendency to make hours expended the essential inquiry." *In re Dr. Pepper/Seven Up Companies, Inc. Shareholders Litig.*, 1996 WL 74214, at *5. Instead,

> [t]he more important aspect is effort, as in what plaintiffs' counsel actually did. When an entrepreneurial plaintiffs' firm engages in adversarial discovery, obtains documents from third parties, pursues motions to compel, and litigates merits-oriented issues, they are likely representing the interests of the class. *See* Lance P. McMillian, *The Nuisance Settlement "Problem"; The Elusive Truth and a Clarifying Proposal,* 31 Am. J. Trial. Advoc. 221, 258 (2007) ("[D]oes the plaintiff put its money where its mouth is? . . . [T]he willingness or unwillingness of the plaintiff to devote resources to a case provides a window into how that plaintiff views the litigation."); *id.* at 236 n. 49 ("The longer the plaintiff litigates and the more money it invests into a case, the less likely the initial filing was motivated by nuisance intent."). By contrast, "[i]f cases are filed, sit idle for extended periods of time, and then settle or are dismissed without evidence of any action by the plaintiffs' attorneys, the claim could be made that these cases amount to little more than a sale [or an attempted sale] of a release of all potential claims in litigation." Robert B. Thompson & Randall S. Thomas. *The New Look of Shareholder Litigation: Acquisition–Oriented Class Actions,* 57 Vand. L.Rev. 133, 154 (2004).

*In re Sauer-Danfoss*, 65 A.3d at 1139.

The evidence presented here, as well as the presentations made at hearings in this matter, reflects substantial efforts by Plaintiffs' counsel. These were made without any assurance that there would be any compensation.

> (3)   The Relative Complexities of the Litigation

"One of the secondary *Sugarland* factors is the complexity of the litigation. All else equal, litigation that is challenging and complex supports a higher fee award." *In re Activision Blizzard,* 124 A.3d at 1072. Plaintiffs argue that this action was "highly complex." Motion for Fees, Dkt. 120 at 25. They argue that derivative lawsuits are "notoriously difficult and unpredictable" (*Id.* (quoting *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, at *7 (N.D. Cal. Dec. 19, 2008)) and "are rarely successful." *Id.* (quoting *In re Pacific Enters. Sec. Litig.*, 47 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

373, 378 & n.4 (9th Cir. 1995) (citing statistics showing that "derivative lawsuits resulted in judgment for the plaintiffs in less than one percent of cases")). They note that the case involved a "novel theory as it applied the *Unocal* doctrine after the transactions at issue had closed." *Id.* at 8.

This action presented complex factual issues.

(4)     Any Contingency Factor

"Another secondary *Sugarland* factor is the contingent nature of the representation. It is the 'public policy of Delaware to reward risk-taking in the interests of shareholders.'" *In re Activision Blizzard*, 124 A.3d at 1073 (quoting *In re Plains Res. Inc.,* 2005 WL 332811, at *6). "Not all contingent cases involve the same level of contingency risk." *Id.*

Plaintiffs state that they "undertook this action on a wholly contingent basis" although "there was no guarantee the case would survive a motion to dismiss or that there would be a successful resolution." Motion for Fees, Dkt. 120 at 9. They add that JAKKS could have established a special litigation committee to evaluate these claims and determine whether they should have been brought. *Id.* Plaintiffs cite to an earlier statement by now Delaware Chief Justice Strine. Prior to his investiture in that position, he stated that a fee awarded to plaintiffs' counsel will often seem like "a lot per hour to people who get paid by the hour. Of course, the people who get paid by the hour often get a retainer -- or they should." By contrast, there are many instances where "the plaintiff's lawyers involved in this case don't get anything." *In re: Southern* Peru, No. 961-CS (TRANSCRIPT) (Del. Ch. Dec. 30, 2011) at 80:2-12 (Fleming Dec., Ex. N).

Here, "[u]nlike the now-ubiquitous pre-closing expedited challenges to mergers that are routinely settled with supplemental disclosures, Counsel did not enter the case with a ready-made exit. Counsel faced risk in pursuing a damages remedy, including the realistic possibility that Counsel would receive nothing for their time and effort." *Orchard,* 2014 WL 4181912, at *9. Thus, "[t]he Court recognizes that counsel undertook a risk of spending many hours and incurring expenses in this litigation without any assurance they would be paid for that time. However, this is a normal risk in shareholder litigation suits." *Feuer,* 2013 WL 2950667, at *7.

This litigation also included certain unique risk factors. As noted above, Plaintiffs have stated that the application of *Unocal* to a transaction after it had closed was novel, and that damages are difficult to obtain in a *Unocal* case. Dkt. 120 at 8, 23 n. 15. Moreover, the case involved hundreds of hours billed by partners, many of whom are at a senior level, at relatively small firms. This supports an inference that the case involved a large opportunity cost, as the firms were required to devote a significant proportion of their resources to the litigation while it was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | | Date | November 15, 2016 |
|---|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | | |

ongoing. *See In re Activision Blizzard*, 124 A.3d at 1073. These factors support the view that the case "involved true contingency risk." *Id.*

For these reasons, the risk and opportunity costs involved in this litigation supports the application of a risk premium to the attorney's fee award.

(5)     The Standing and Ability of Counsel Involved

Plaintiffs' counsel refer to their skill and experience in shareholder cases. *See* Dkt. 98 (providing counsel's resumes and experience in this field). They note that their counsel overcame "persuasive advocacy by the highly skilled attorneys representing the Board" to "persuade[] the Court to sustain the *Unocal* claim as to the Defensive Repurchase and the SRA." Motion for Fees, Dkt. 120 at 9.

Plaintiffs' lawyers brought experience and skill to this litigation.

(6)     Deference to a Negotiated Agreement

The following statement by the Delaware Court of Chancery is significant here:

> The Delaware Supreme Court has held that "the Court of Chancery must make an independent determination of reasonableness on behalf of the common fund's beneficiaries, before making or approving an attorney's fee award." [*Goodrich v.*] *E.F. Hutton,* 681 A.2d [1039,] 1046 [(Del. 1996)]. As this court has observed, *E.F. Hutton* "unequivocally" requires that "where plaintiffs and defendants agree upon fees in settlement of a class action lawsuit, a trial court must make an independent determination of reasonableness of the agreed to fees." *In re Nat'l City Corp. S'holders Litig.,* 2009 WL 2425389, at *5 (Del. Ch. July 31, 2009) (internal quotation marks omitted), *aff'd,* 998 A.2d 851 (Del. 2010). "The fact that a fee is negotiated . . . does not obviate the need for independent judicial scrutiny of the fee because of the omnipresent threat that plaintiffs would trade off settlement benefits for an agreement that the defendant will not contest a substantial fee award." *Id.* at *5. Notwithstanding these statements, some of this court's decisions speak of giving deference to a negotiated fee agreement. In my view, any apparent tension can be harmonized by differentiating between evaluating a range of reasonableness and determining a specific amount. Under Delaware Supreme Court precedent, the court must determine that the award falls within a reasonable range. If it does, then a court can defer to the parties' negotiated amount. *See Forsythe,* 2012 WL 1655538, at *7 (remarking that a negotiated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |

*(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)*

fee application which "falls within a reasonable range [warrants] deference to the parties' negotiated amount").

*In re Activision Blizzard*, 124 A.3d at 1074-75. *See also Feuer*, 2013 WL 2950667, at *4 (N.D. Cal. June 14, 2013) ("a negotiated fee agreement . . . generally is not subjected to the same level of judicial scrutiny as a disputed fee request").

In this action, Plaintiffs have submitted a declaration from Judge Phillips in which he states that the

> attorneys' fees and expense negotiations did not occur until all other substantive terms of the Settlement were agreed upon. The negotiations concerning the award of attorneys' fees and expenses were conducted at arm's length, were not collusive and Defendants' agreement to not oppose an attorneys' fee and expense award of up to $2.5 million was arrived at after negotiations conducted by [Judge Phillips].

Motion for Fees, Dkt. 120 at 17 (quoting Decl. of Judge Phillips (Ret.) ¶ 11, Dkt. 120-1). *See In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *4 ("The Court also notes that the proposed fee award is the product of arm's-length negotiation between counsel highly experience in shareholder derivative actions and agreed upon only after the other terms of the Settlement were negotiated.").

3.    <u>Conclusion</u>

Having evaluated each of these matters, it is determined that a reasonable fee award in this matter is $2.3 million. This figure reflects a reduction of $200,000 from the requested amount. The Court concludes that the award of $2.3 Million is appropriate based on an evaluation of all the *Sugarland* factors: 1) the results achieved; 2) the time and effort of counsel; 3) the relative complexities of the litigation; 4) the contingency risk; and 5) the standing and ability of counsel involved. *Ams Mining*, 51 A.3d at 1254. The results achieved conferred a benefit upon JAKKS shareholders that was responsive to the claims brought, the litigation was complex, and the lawyers were skilled and undertook financial risk in pursuing the claims. These factors support a premium above an amount that reflects only the value of the time spent by counsel. However, there is limited evidence of the actual value to JAKKS or its shareholders of the changes to corporate governance. When considered together with the amount of time spent on some of the litigation tasks, which is discussed above, the reduction is warranted. The fee award also takes into account that the fee negotiations were conducted after Judge Phillips had completed his role in the settlement process. It also takes into account that the insurance carrier, not JAKKS, will be funding the entire payment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA CV14-01420 JAK (SSx) | Date | November 15, 2016 |
|----------|--------------------------|------|-------------------|
| Title | Advanced Advisors G. P. v. Stephen Berman, et al. | | |
| | *(Consolidated Case LA CV14-01670 JAK (SSx): Louisiana Municipal Police Employees Retirement System v. Stephen Berman, et al.)* | | |

**V.     Conclusion**

For the reasons stated in this Order, the Motion for Settlement Approval is **GRANTED**, and the Motion for Fees is **GRANTED IN PART and DENIED IN PART.** Pursuant to the terms of the Settlement Agreement, this action is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

_____  :  _____

Initials of Preparer     ak
_____